44    5
47   164

---

GEORGE H. HUTCHINS, Administrator, *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

June 27, 1890.

Statutory Action for Causing Death—Administration Solely to Prosecute Action.—The probate court has jurisdiction to direct administration for the purpose of enforcing a cause of action arising under the statutes of this state for the death of a person caused by the wrongful act or omission of another, although the deceased was not an inhabitant of this state, and left no property therein.

Same—Damages Recoverable.—In such actions the damages are purely compensatory for pecuniary loss. No compensation can be given for wounded feelings, or for the loss of the comfort or companionship of a relative, nor for the pain and suffering of the deceased. The basis on which the damages are to be estimated is the probable pecuniary loss of the widow or next of kin by reason of the death of the deceased, in view of all the facts and circumstances in evidence, and, if the verdict is greatly in excess of the sum thus arrived at, the court should set it aside or reduce it.

Same—Excessive Damages—Power of Court.—While the court has no right to substitute its own estimate of the damages for that of the jury, yet it has the right to determine the amount beyond which there is no evidence, upon any reasonable view of the case, to support the verdict,

and to order a new trial, unless the plaintiff will consent to reduce the verdict to such amount.

**Same—Distinction between such Action and Action by Person Injured.**—Actions under the statute, for injuries causing death, where the damages are wholly compensatory for pecuniary loss, distinguished from those for wilful torts or for personal injuries, in which punitive damages, or damages for injuries not pecuniary in their nature, such as injury to the feelings, or for mental and physical pain and suffering, are allowed.

Plaintiff, as administrator of William Ferguson, brought this action in the district court for Hennepin county, to recover damages for alleged negligence of defendant resulting in the death of his intestate. At the trial before *Smith, J.,* the plaintiff had a verdict of $3,500. The defendant appeals from an order refusing a new trial.

*Benton & Roberts,* for appellant:

*Welch, Botkin & Welch,* for respondent.

MITCHELL, J. This was an action under the statute to recover damages for the death of plaintiff's intestate, caused by the alleged negligence of the defendant. Gen. St. 1878, c. 77, § 2. Plaintiff's letters of administration were issued by the probate court of Hennepin county, in which the deceased received the injuries of which he there died. The gist of defendant's first and second assignments of error is that the probate court had no jurisdiction to direct administration, because the deceased was not an inhabitant of this state, and left no assets therein. See Gen. St. 1878, c. 49, § 2. Without now considering whether letters of administration can be assailed collaterally on any such ground, we are of opinion that a cause of action under the statute first cited is to be deemed assets of the deceased, within the meaning of the statute last cited, so as to give the probate court jurisdiction to direct administration for the purpose of enforcing it, and distributing the proceeds. It is true that, strictly speaking, the cause of action did not belong to the deceased in his lifetime, but only accrued at his death; also that, when realized on, the proceeds form no part of his general estate, but belong to his next of kin. But the narrow and literal construction contended for by the appellant would often prevent the enforcement of the cause of action at all, because of the impossibility of securing a personal

representative of the deceased to maintain it. Administration is a proceeding *in rem*, the *res* being the estate of the deceased; and we apprehend that, whether the deceased was a resident or a non-resident, the existence of assets is essential to administration, for it is the estate, and not the expired breath, of the deceased upon which administration operates. Hence it would seem to follow, from appellant's logic, that if the deceased left no assets, strictly so called, no administration could ever be had, and consequently the statutory right of action for the benefit of the next of kin could never be enforced. This right of action is given in case of the death of any person, whether a resident of the state, or only temporarily sojourning in it, at the time of his receiving the injuries causing his death. The law will not allow it to be defeated for want of a party to maintain it. The fact that the statute gives such a right of action to the personal representative, and to him alone, implies the right to appoint, if necessary, an administrator to enforce it, and administer the proceeds in accordance with the statute. See *Hartford & N. H. R. Co.* v. *Andrews*, 36 Conn. 213.

The next error assigned is the refusal of the court to dismiss the action on the ground that the evidence conclusively showed that the deceased was guilty of contributory negligence. Ordinarily, in case of an affirmance, a discussion of the evidence upon a question of this kind subserves no useful purpose, and we see nothing in the facts of the present case that takes it out of this general rule. Hence we content ourselves with saying that, in our judgment, the question of the negligence of the deceased was, upon the evidence, for the jury.

The only remaining question requiring consideration is whether the damages awarded ($3,500) were excessive. The only evidence bearing upon this question was the testimony of the mother of the deceased, who was evidently an unusually candid and honest witness, although, as was natural, her maternal affection may have inclined her to look with some partiality upon the character and conduct of her son. It appears that the deceased was nearly 39 years of age at the time of his death, and that he had always been an able-bodied and healthy man. He commenced railroading when a mere boy, and continued in that business up to the time of his death, with the

exception of six or eight months immediately preceding the close of the late civil war, during which he was in the army. At the end of the war he resumed railroading, and very soon afterwards married, when only about 17 years old. Shortly after his marriage he went to California, where he remained a year or two, leaving his wife at his mother's. What he did in California does not distinctly appear. His wife and he never lived together again, she having, for some cause, obtained a divorce. He remained single ever afterwards, so that for the last 20 years, at least, he had no family to support. He seems to have followed a somewhat roving life, never remaining permanently in any one place or in the employment of any one railroad company, as he had been in the service of a great many different roads in almost all the northwestern states and territories. He had been in the employment of the defendant only a day or two at the time of his death. At one time, years ago, he had occupied the position of locomotive engineer, but at the time of his decease he was a freight brakeman, earning $2.25 per day. He had accumulated no property, and left no estate whatever, except his clothing and a few books. He was in the habit of visiting his mother on an average, she says, of about twice a year, and when at home on these visits was always busy doing chores and fixing up things about the house for her comfort and convenience. She says he always did for her all he possibly could with the pay that railroads gave, and she estimated that what he gave her, and what work he did when at home on visits, together averaged about $50 a year; but, when interrogated as to what moneys he ever gave her, she could only recall the sum of $13 at one time, and $5 at another, and a "little pocket change." She admitted that he never sent her any money by letter; also that he did not give her any the last time he was at home. She was somewhat advanced in life, (about 62 years old,) and living with her second husband, on an 80-acre farm owned in part by herself and in part by her husband, and from which by hard work they made a very moderate living. Hence she was by no means above the need of more aid from her son, if he had the ability and disposition to give it. While it is apparent that he had a sincere attachment for his mother, yet it is evident from her testimony, colored somewhat, as it probably

is, by her maternal love, that the pecuniary assistance which he gave her during all these years was very meagre. We have made no reference to a bounty which she received when he enlisted in the army, as it has no bearing upon the question as to what pecuniary benefit she might have reasonably expected to derive in the future from the continuance of his life. We shall assume, as counsel have, that she is the sole beneficiary under the statute.

There is nothing better settled than that the principle on which damages are to be assessed under these statutes is that of pecuniary loss, and not as a *solatium.* No compensation can be given for wounded feelings, or loss of the comfort and companionship of a relative, nor for the pain and suffering of the deceased. The true and only test is, what sum will compensate the next of kin for the pecuniary loss sustained by them by the death of the deceased? or, in other words, what, in view of all the facts and circumstances in evidence, was the probable pecuniary interest of the beneficiaries in the continuance of the life of the deceased? A case under this statute is clearly distinguishable from one for a wilful or malicious tort, where punitive damages, or damages for injuries to the feelings, are allowable; or one for personal injuries to the plaintiff himself, where compensation is allowed for mental and physical pain and suffering, as well as for probable future injury to health. In all such cases, the damages not being confined to strictly pecuniary loss, the estimate of them is necessarily so largely in the discretion of the jury that a court will not ordinarily interfere with their verdict, unless it is so excessive as to warrant a belief that they must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case. But, as already remarked, the damages under the statute are wholly compensatory for pecuniary loss, and exclude all punitive or exemplary elements, as well as all solace for loss of society, or compensation for the injured feelings of the survivors, or the suffering of the deceased. Hence it is not, in general, so difficult to estimate the damages; and for that reason courts will have less hesitancy in interfering with verdicts. The proper estimate can usually be arrived at with approximate accuracy by taking into account the calling of the deceased, and the income

derived therefrom; his health, age, talents, habits of industry, his success in life in the past, as well as the amount of aid in money or services which he was accustomed to furnish the next of kin; and, if the verdict is greatly in excess of the sum thus arrived at, the court will set it aside or cut it down. 2 Thomp. Neg. 1291, 1292; *Rose* v. *Des Moines Valley R. Co.*, 39 Iowa, 246, 255; *Chicago & N. W. Ry. Co.* v. *Bayfield*, 37 Mich. 205, 214; *Balch* v. *Grand Rapids & Ind. R. Co.*, 67 Mich. 394, (34 N. W. Rep. 884;) *Howard* v. *Delaware & H. Canal Co.*, 40 Fed. Rep. 195, 198.

And, even as between different cases under the statute, these suggestions apply with special force to one like the present, where the deceased was not the head of a family, and left neither wife nor children. As was said in *Bolinger* v. *St. Paul & Duluth R. Co.*, 36 Minn. 418, (31 N. W. Rep. 856.) the value of the services of the head of a family in a pecuniary sense cannot be limited to the amount of his earnings for their support. His constant attention and care in their behalf, in the relation of husband and father, is also to be considered in estimating the pecuniary loss to his family; and in such cases a court would perhaps very rarely feel warranted in setting aside or reducing the verdict. But, even in those cases, the determination of the amount of damages is by no means left to the uncontrolled discretion of the jury. Their estimate must be based on facts in evidence, and confined to those damages which are pecuniary in their nature, and result from the death of the deceased. The present case is not embarrassed by any such circumstances. The deceased had no family. The pecuniary benefit which the mother might reasonably have expected to derive from the continuance of the life of her son must have been almost exclusively confined to contributions of money or property for her support. Estimated on such a basis, it is impossible to see how her pecuniary interest in his life could have amounted to $3,500. The future must be judged by the past. Here was a healthy, able-bodied man, who had attained the age of 39 years. He had no one but himself to support, aside from the paltry sums occasionally given to his mother, and yet he had accumulated nothing, and died almost absolutely penniless. He certainly was not in the line of promotion in his calling. True, it is possible that he might

have become more thrifty in future, but this was not at all probable, in view of his age and past history. He might have met with some extraordinary streak of good luck, such as discovering a valuable mine, or drawing a large prize in a lottery, but these contingencies are altogether too speculative to form any legitimate basis for an estimate of damages. If we take the mother's own liberal estimate of $50 a year as the criterion of what she might have expected from him in the future had he lived, legal interest on $3,500 would give a perpetual income nearly five times as great. At her age, the mother's expectation of life was about seven and a half years. Had the son contributed to her support $50 a year for that length of time it would only amount to $375, or, if he would have increased it to $100 per year, it would only amount to $750. Had he for that length of time given his mother his entire gross earnings, the present worth of their aggregate amount would hardly have equalled the amount of the verdict. In short, it is impossible, upon any reasonable view of the evidence, to support the conclusion of the jury, that the pecuniary loss of the mother by the death of her son amounted to $3,500. The verdict is wholly unsupported by the evidence. Within certain limits, much must be left to the sound judgment of the jury, and a court has no right to substitute its estimate for theirs; but we have a right to say that beyond a certain amount there is, on any reasonable view of the case, absolutely no evidence to sustain it.

The order appealed from should be reversed, and a new trial granted, unless the plaintiff shall, within 20 days after the filing of a *remittitur* in the district court, file with the clerk of that court a stipulation, consenting that the verdict be reduced to the sum of $2,000, in which case the order appealed from will be affirmed, and the verdict as thus reduced stand.

Ordered accordingly.