Lyle EISERT, trustee for the heirs of Todd Eisert, deceased, and Donald Strommen, trustee for the heirs of Dale Strommen, deceased, petitioners, Appellants,

Independent School District No. 999, a.k.a. Agassiz Valley Vocational Cooperative Center, Plaintiff,

v.

GREENBERG ROOFING & SHEET METAL COMPANY, Respondent,

Empro Corporation, Respondent,

PPG Industries, Inc., Respondent,

Cook Paint & Varnish Company, Inc., Respondent,

and

INDEPENDENT SCHOOL DISTRICT NO. 593, CROOKSTON, Minnesota, petitioner, Appellant,

v.

GREENBERG ROOFING & SHEET METAL COMPANY, Respondent,

Empro Corporation, Respondent,

PPG Industries, Inc., Respondent,

Cook Paint & Varnish Company, Inc., Respondent.

Nos. 51429, 51433 and 51400.

Supreme Court of Minnesota.

Jan. 15, 1982.

Robins, Zelle, Larson & Kaplan, James L. Fetterly, Robert M. Wattson and William P. Linhoff, Jr., Minneapolis, for Eisert.

Jesse & Cosgrove and Robert J. Healy, Minneapolis, Quinlivan & Williams, St. Cloud, for Ind. Sch. Dist. No. 593.

Hanft, Fride, O'Brien & Harries and Tyrone P. Bujold, Duluth, for Greenberg Roofing & Sheet Metal Co.

Thysell, Gjevre, McLarnan, Hannaher, Vaa & Skatvold and Galen J. Vaa, Moorhead, for Empro Corp.

Cahill, Gunhus, Grinnell, Jeffries, Klinger, Vinje & Swenson, Moorhead, Dickie, McCamey & Chilcote, Pittsburg, Pa., for PPG Industries, Inc.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and J. Richard Bland, Minneapolis, for Cook Paint & Varnish Co., Inc.

Dosland, Dosland & Nordhaugen, Moorhead, for Ind. Sch. Dist. No. 999.

## OPINION

PETERSON, Justice.

These consolidated appeals arise out of a fire in the auto body shop at the Agassiz Valley Vocational Cooperative Center in Crookston, Minnesota. The fire caused the deaths of two Crookston Central High School students, Todd Eisert and Dale Strommen, and caused property damage to a building owned by Independent School District No. 593 (school district). The first issue for decision involves the recoverability of punitive damages in an action for wrongful death. The second issue involves the recoverability of punitive damages in a strict liability action where plaintiff has suffered damages solely to property.

On January 13, 1977, gasoline caught fire as students worked on an automobile fuel tank at the Agassiz Valley Vocational Cooperative Center auto body shop. When attempts to extinguish the fire failed, the teacher in charge of the shop ordered evacuation of the building. Three of the five occupants of the shop escaped to safety. Decedent Dale Strommen was caught in the shop's paint-spraying booth when thick, black smoke filled the building. Decedent Todd Eisert was also overcome by the smoke, apparently in an attempt to rescue Strommen.

The school district, which owns and maintains the building where the fire occurred, and trustees for the heirs of the decedents allege that the source of the fatal, toxic smoke and the fuel that sustained the fire was urethane spray foam insulation and intumescent paint. These materials had been applied to the interior of the building in 1971–72 by defendant Greenberg Roofing .& Sheet Metal Company. The insulation was manufactured by defendant PPG Industries, Inc. and distributed by defendant Empro Corporation; the paint was allegedly produced and sold by defendant Cook Paint & Varnish Company, Inc.

Plaintiffs variously allege that the insulation, represented by defendants ás self-extinguishing, and the paint, represented as fire retardant, were manufactured, distributed, and applied in "willful, wanton and intentional disregard" of and "willful indifference"[1] to the fire hazards they presented.

Separate lawsuits were brought by trustees (under the wrongful death statute, Minn.Stat. § 573.02 (1980)) and by the school district (for property damage under products liability law), and the actions were consolidated for trial on the school district's motion in an order of the Polk County District Court. Following the completion of discovery, all defendants moved to dismiss the punitive damages claims in trustees' complaint and the school district moved to amend its complaint to request punitive damages against the two defendant manufacturers. The district court granted defendants' motions and denied the school district leave to amend its complaint. Trustees and the school district now appeal.

---

1. "Willful indifference" is the language used in Minn.Stat. § 549.20, subd. 1 (1980), to connote intentional, conscious, and deliberate conduct.

■ 1. The cause of action for wrongful death is a statutory creation intended to correct the inequity which existed at common law whereby civil recovery was allowed for wrongful personal injury but not for wrongful death.[2] Trustees ask us to remove an inequity which apparently remains: a wrongdoer's exposure to liability for punitive damages is eliminated by the death of the victim. Inasmuch as the underlying cause of action is statutory, the question is one of legislative intent.

■ Minn.Stat. § 573.02, subd. 1 (1980), provides in pertinent part:

> The recovery in [an action for death by wrongful act] is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death, and shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death. The court then determines the proportionate pecuniary loss of the persons entitled to the recovery and orders distribution accordingly.

The statute makes no mention of punitive damages. We believe, however, that the reference to "pecuniary loss" is clear in its intent to preclude recovery of punitive damages. Punitive damages, if recoverable, would be awarded to punish and deter, not to compensate for pecuniary loss.

Dicta in three early cases express a long-held view that punitive damages may not be recovered in an action for wrongful death. *Gunderson v. Northwestern Elevator Co.*, 47 Minn. 161, 164, 49 N.W. 694, 695 (1891); *Hutchins v. St. Paul, Minneapolis & Manitoba Railway Co.*, 44 Minn. 5, 9, 46 N.W. 79, 80–81 (1890); *Shaber v. St. Paul, Minneapolis & Manitoba Railway Co.*, 28 Minn. 103, 107, 9 N.W. 575, 577 (1881). It may fairly be presumed that the legislature was aware of this interpretation of the statute and that, had the legislature intended to permit the award of punitive damages when it inserted the reference to "pecuniary loss" in Act of April 23, 1951, c. 697, § 1, 1951 Minn.Laws 1215, it would have done so by express direction.[3]

Although the disparate treatment of the tortfeasor who injures and the tortfeasor who causes death may appear inequitable, any change in the recovery for wrongful death that is not permitted by fair interpretation of the statute is for the legislature to make.

The order of the district court dismissing the punitive damages claims in trustees' complaint is accordingly affirmed.

2. The school district's appeal is from an order denying its motion to amend its complaint to include a claim for punitive damages against the defendant manufacturers. The disposition of this motion necessarily raises the issue of the allowability of punitive damages in strict products liability property damage actions, for, if such damages were allowable, leave to amend should have been granted pursuant to Minn.R. Civ.P. 15.01.[4]

■ We hold, however, that punitive damages are not recoverable under a strict products liability theory for property damage and accordingly affirm the trial court's denial of the motion to amend.

We first awarded punitive damages in a strict liability action in *Gryc v. Dayton-*

2. For a discussion of the origin and development of death-by-wrongful-act statutes, see *Fussner v. Andert*, 261 Minn. 347, 350–52, 113 N.W.2d 355, 357–58 (1961).

3. Cases from other jurisdictions cited by trustees are inapplicable because the statutes involved in those cases, unlike our statutes, either contain elements of common law survival actions, *see, e.g., Fields v. Huff*, 510 F.Supp. 238 (E.D.Ark.1981), or make no mention of pecuniary loss, *see, e.g., Bond v. City of Huntington*, 276 S.E.2d 539 (W.Va.1981).

4. The trial court did not file a memorandum stating the reasons for its order. It may be that the trial court considered the prejudice that might result to one of the defendants in a consolidated action if punitive damages was an element in one but not the other of the two cases; but were that the case, prejudice would have been avoided by severing for trial the consolidated cases rather than denying the motion to amend.

*Hudson Corp.*, 297 N.W.2d 727 (Minn.), *cert. denied*, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980). In that case, involving injuries to a child caused by flammable sleepwear, we said that the "punitive damages remedy concerns the vital state interest of protecting persons against personal injury." *Id.* at 737. The interests implicated in strict liability actions for injury solely to property are not so great as to warrant extension of this controversial remedy to those actions. "[T]he very power of the remedy demands that judges exercise close control over the imposition and assessment of punitive damages." Mallor and Roberts, "Punitive Damages: Toward a Principled Approach," 31 Hast.L.J. 639, 670 (1980).

Although the nature of the plaintiff's injury is not always listed as a factor in determining how to assess punitive damages, *see e.g.*, Minn.Stat. § 549.20, subd. 3 (1980), it may reasonably be taken into account in deciding where punitive damages will be allowed, *see* Owen, "Punitive Damages in Products Liability Litigation," 74 Mich.L.Rev. 1257, 1269–70 (1976). Where that injury is limited to property damage, the public interest in punishment and deterrence is largely satisfied by the plaintiff's recovery of compensatory damages. Punitive damages represent an extraordinary measure of deterrence. Denying their imposition in this case, after allowing punitive damages in strict liability actions for personal injury, reflects the higher value our society places on the safety of persons than it does on the security of property.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.