WILLIAMS PIPE LINE COMPANY, a
Delaware corporation, Plaintiff,

v.

CITY OF MOUNDS VIEW, MINNESOTA,
an incorporated municipality, Jerome
W. Linke, its Mayor, Donald F. Pauley,
its Clerk–Administrator, Barbara A.
Haake, Susan Hankner, Phyllis I.
Blanchard, and Gary C. Quick, mem-
bers of the Mounds View City Council,
Defendants.

COUNTY OF RAMSEY, Plaintiff,

v.

WILLIAMS PIPE LINE CO.,
INC., Defendant.

CITY OF MOUNDS VIEW, Plaintiff,

v.

WILLIAMS PIPE LINE
COMPANY, Defendant.

Civ. Nos. 4–86–648, 4–86–651
and 4–86–656.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 6, 1989.

William E. Flynn, Lindquist & Venum, Minneapolis, Minn. and Mark K. Blongewicz, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okl., for Williams Pipe Line.

David F. MacMillan, Asst. County Atty., St. Paul, Minn., for County of Ramsey.

William D. Foster, Jefferson, Priesz & Foster, Minneapolis, Minn., Richard D. Meyers, and Eric W. Valen, St. Paul, Minn., for City of Mounds View.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

These three cases stem from a petroleum pipeline accident which occurred in Mounds View, Minnesota, on July 8, 1986. The parties seek declaratory and injunctive relief and compensatory and punitive damages by their various suits and counterclaims. Federal question and diversity jurisdiction are alleged. Now before the court are three motions by Williams Pipe Line Co. (Williams). Two are for partial summary judgment. First, Williams seeks summary judgment dismissing all of Ramsey County's claims, dismissing all claims of the City of Mounds View except those for compensatory and punitive damages, and granting its claims for permanent injunctive relief. Second, Williams has moved for summary judgment on the punitive damages claim of the City of Mounds View. Williams has also moved to bifurcate the opposing parties' claims for injunctive and declaratory relief from the city's damage claims.

### I.

The factual background is only summarized here. The facts appear in greater detail in a prior Memorandum Opinion and Order issued on January 7, 1987. *Williams Pipe Line Co. v. City of Mounds View*, 651 F.Supp. 551, 553–59 (D.Minn. 1987).

Williams' No. 2 8–inch pipeline known as Line 2N, was constructed through Mounds View and other parts of Ramsey County in 1957. The line runs from Minneapolis, Minnesota to Duluth, Minnesota and Superior, Wisconsin. Part of the line was built on land owned by Ramsey County along county roads, including Long Lake Road. A November 18, 1957 county board resolution granted Williams' predecessor permission to lay the pipeline subject to a variety of conditions. The conditions include provisions for traffic safety, road repair, pipeline depth, and county supervision of repairs. The most significant of the conditions purport to give the county the power to order the pipeline removed or replaced and to make rules relating to the safety of its operation.

Line 2N is an interstate hazardous liquid pipeline which is regulated by the Hazardous Liquid Pipeline Safety Act of 1979 (HLPSA). 49 U.S.C. App. §§ 2001–2014. The Act provides that the Secretary of the Department of Transportation (the Secretary) must establish and enforce regulations for hazardous liquid pipelines. The Secretary regulates the pipelines through the Office of Pipeline Safety (OPS) which has direct responsibility for the enforcement of the HLPSA and the safety regulations promulgated under it. *See generally* 49 C.F.R. §§ 190.1–195.440 (1987).

On July 8, 1986, a portion of Line 2N along Long Lake Road burst. Thousands of gallons of gasoline were released and flowed to the surface of the road. Sparks from a passing automobile ignited the gas

vapor resulting in an explosion and fire which killed two people and badly burned a third. Property and environmental damage were also caused.

A variety of governmental actions were taken in response to the accident. The parties, the state of Minnesota, OPS, and the National Transportation Safety Board (NTSB)[1] immediately undertook investigations of the accident and Williams' other pipeline operations. On the day of the accident, Mounds View adopted a city ordinance prohibiting operation of the pipeline until the city was given assurances of safety and all property damages were paid. On July 14, 1986, Mounds View adopted another ordinance prohibiting repair of the pipeline without a city permit.[2] The Ramsey County Board of Commissioners passed a resolution on July 28, 1986 reserving to itself certain supervisory powers over the operation and repair of all pipelines in the county. NTSB issued a pipeline accident report stating its conclusions about the Mounds View accident and making recommendations to Williams, the American Pipeline Institute, OPS, and the Department of Transportation. National Transp. Safety Bd., *Pipeline Accident Report: Williams Pipe Line Company Liquid Pipeline Rupture and Fire, Mounds View, Minnesota, July 8, 1986* (July 20, 1987). OPS found Williams to have violated several regulations, and it imposed substantial fines for their breach. OPS has restrained Williams' operation of Line 2N and required Williams to conduct a number of tests on the pipeline, to comply with an Operational Reliability Analysis, and to take a variety of other actions.

These three cases are related to post-accident efforts of Mounds View and Ramsey County to control Williams' pipeline operations and to efforts by Williams to resist such control. Williams filed its action, *Williams Pipe Line Co. v. City of Mounds View* (No. 4–86–648), on August 14, 1986, seeking declaratory relief and an injunction prohibiting Mounds View and its officials from interfering with Williams' testing and operation of the pipeline. Mounds View filed a counterclaim, later amended, seeking compensatory and punitive damages and an injunction prohibiting Williams from operating its pipeline in Mounds View or ordering Williams to replace the pipeline and operate it in compliance with the law. Mounds View also sought to enjoin Williams from operating its pipeline in Mounds View through a separate action, *City of Mounds View v. Williams Pipe Line Co.* (No. 4–86–656). That action was filed in Minnesota state court on August 14, 1986 and removed by Williams to this court. Ramsey County filed its action, *County of Ramsey v. Williams Pipe Line Co.* (No. 4–86–651), in Minnesota state court on August 13, 1986. It sought a declaration of the validity and effect of its November 18, 1957 board resolution and an injunction prohibiting Williams from taking certain actions related to the pipeline. Williams removed No. 4–86–651 to this court and filed a counterclaim seeking declaratory relief and an injunction prohibiting Ramsey County from interfering with its testing and operation of the pipeline.

This court has addressed many of the parties' claims in preliminary form on earlier motions. On August 22, 1986, Williams was granted a temporary restraining order prohibiting Ramsey County and Mounds View from interfering with its preparations for testing the pipeline. *Williams Pipe Line Co. v. Mounds View*, 651 F.Supp. 544 (D.Minn.1986). Williams was allowed to test its pipeline pursuant to two September 17, 1986 orders which approved and adopted stipulations among the parties. Another stipulation of the parties was adopted in a December 15, 1986 order which permitted recommencement of operation of Line 2N in specific areas outside of Ramsey County under certain restrictions.[3]

---

**1.** NTSB is an independent agency within the Department of Transportation. Part of its responsibility is to conduct independent investigations of pipeline accidents and to make safety improvement recommendations. 49 U.S.C.App. § 1901.

**2.** Both ordinances have been rescinded.

**3.** In addition to the geographical restriction, operation of the pipeline required OPS approval and was limited to a maximum operating pressure of 600 p.s.i.g. The operating pressure at

On January 7, 1987, Williams was granted a preliminary injunction restraining Ramsey County and Mounds View from interfering with its recommencement of operation of the pipeline to the extent allowed by the Department of Transportation up to a maximum operating pressure of 900 p.s.i.g. *Williams Pipe Line Co. v. City of Mounds View,* 651 F.Supp. 551 (D.Minn.1987).

Williams now has three motions pending before the court. First, it has moved for summary judgment on all of Ramsey County's claims in No. 4–86–651, on all of Mounds View's claims in No. 4–86–656, and on Mounds View's claims for injunctive relief in No. 4–86–648. Williams also seeks summary judgment on its claims for permanent injunctive relief in No. 4–86–648 and No. 4–86–651. Second, Williams has moved for summary judgment dismissing Mounds View's claim for punitive damages in No. 4–86–648.[4] Third, Williams has moved to bifurcate the opposing parties' claims for injunctive and declaratory relief from Mounds View's claims for compensatory and punitive damages.

On a motion for summary judgment, all material facts are construed in favor of the non-moving party. *Agristor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). To defeat a motion for summary judgment, the non-moving party must show that there are specific material facts in dispute creating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Many of the facts central to this motion are now undisputed.

## II.

■ Mounds View seeks injunctive relief pursuant to the citizens civil action provision of the HLPSA, 49 U.S.C.App. § 2014(a). The statute provides:

Except as provided in subsection (b) of this section, any person may commence a civil action for mandatory or prohibitive injunctive relief, including interim equitable relief, against any other person ... who is alleged to be in violation of this chapter or of any order or regulation issued under this chapter.

Mounds View alleges that Williams has violated provisions of the HLPSA and the regulations promulgated under it. It seeks an injunction ordering the pipeline removed from Mounds View or ordering it replaced and operated in accordance with the law.

Williams has moved for summary judgment dismissing this claim. It argues that Mounds View's citizen suit is precluded by 49 U.S.C.App. § 2014(b) which states:

No civil action may be commenced under subsection (a) of this section with respect to any alleged violation of this chapter or any order or regulation issued under this chapter—

. . . . .

(2) if the Secretary ... has commenced and is diligently pursuing administrative proceedings ... with respect to such alleged violation.

Williams contends that the Secretary, through OPS, diligently pursued the administrative proceedings against it. It recites the actions OPS has taken and asserts that Mounds View's efforts to impose additional enforcement measures is precluded by the agency's "decision" not to act. The citizens civil action provision, Williams argues, is subordinate to agency action, and where the OPS has taken extensive enforcement measures, as it has here, the citizen suit is precluded.

Mounds View concedes that OPS has addressed nearly all of its concerns. It contends, however, that OPS has not diligently pursued its administrative proceedings because it has failed to respond adequately to the possibility that the accident was caused by corrosion of the pipeline. Mounds View

---

the time of the accident had been over 1400 p.s.i.g.

**4.** These two motions for summary judgment do not address Mounds View's property damage claim in No. 4–86–648 or Williams' claims for declaratory relief in No. 4–86–648 and No. 4–

86–651. In its briefs, Williams indicated that it was no longer pursuing its claims for declaratory relief, stating that only Mounds View's property damage claim was not covered by these two motions. Accordingly, Williams' claims for declaratory relief should be dismissed.

asserts that the evidence shows corrosion was a contributing cause of the failure. It argues that "diligent pursuit" requires a visual inspection of the buried pipeline when corrosion is shown to have been a possible cause of the accident. OPS has not concluded what caused the pipeline failure.

The court is aware of no decisions by other courts addressing the diligent pursuit provision of § 2014, but the plain language of the statute and interpretations of similar provisions in other acts should be considered on the diligence issue. One purpose of the "diligent pursuit" provision of § 2014(b) is to prevent citizen suits from interfering with the agency's implementation of the HLPSA. *Cf. Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57, 63 (2d Cir.1985) (diligent prosecution provision of Federal Water Pollution Control Act designed to avert "obvious danger that unlimited public actions might disrupt the implementation of the Act"); *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 682 F.Supp. 1186, 1188–89 (N.D.Ala.1988) (diligent pursuit provision of Federal Water Pollution Control Act protects agency discretion from threat posed by citizen suits). The agency is entitled to deference in the remedies it chooses to pursue and those it chooses to forgo. *See, e.g., Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987) (Congress did not intend citizen suit provision of Federal Water Pollution Control Act to destroy discretion of agency to forgo certain remedies); *Gardeski v. Colonial Sand & Stone Co.*, 501 F.Supp. 1159, 1166 (S.D.N.Y.1980) (citizen suit provision of Clean Air Act limited by agency discretion to choose form and scope of proceedings). Where the agency has considered the specific concerns raised in the citizen suit, deference to its decision is particularly appropriate.

The actions of OPS in response to the Mounds View accident have been extensive. It commenced its investigation immediately after the accident. In a July 11, 1986 order, OPS required hydrostatic testing of the pipeline. The order was amended on August 22, 1986 to require an Operational Reliability Analysis (ORA). The ORA consisted of extensive testing and analysis to determine the cause of the failure, to test the pipeline's safety, and to improve future operation of the pipeline. The ORA final report, released in August 1988, recommends to OPS a variety of further actions related to the pipeline's future operation. Since the time of the accident, OPS has restricted operation of Line 2N and has only gradually loosened those restraints as information about the pipeline's safety has been gathered. On March 13, 1987, OPS imposed a civil penalty of $115,000 upon Williams for violations of HLPSA regulations related to the accident. OPS has also mandated a variety of actions by Williams to bring it into compliance with safety regulations. Although OPS has not made any conclusions as to the cause of the accident, it has considered the evidence which Mounds View asserts shows that corrosion contributed to the accident, and it has chosen not to require visual inspection of the entire pipeline. The continuous and considerable enforcement actions of OPS in response to the Mounds View accident constitutes "diligent pursuit" under § 2014(b) and precludes Mounds View's citizen suit. Williams' motion for summary judgment dismissing Mounds View's § 2014 claim will be granted.

In its memorandum to the court opposing Williams' motion for summary judgment, Mounds View argued that it would be entitled to attorneys' fees under § 2014(e) even if its § 2014(a) claim was dismissed. No motion has been made for attorneys' fees under § 2014(e), however, and both Williams and Mounds View agree that the request in the memorandum was premature.

### III.

Williams argues that Mounds View's remaining claims for injunctive relief and all of Ramsey County's claims are preempted by federal law and should be dismissed. Mounds View has sought to restrict Williams' operations through its public nuisance claims. Ramsey County seeks control over the pipeline through its

property claims. Williams argues that these are efforts to regulate the pipeline which conflict with the federal regulatory scheme and are preempted under the supremacy clause. U.S. Const. art. VI cl. 2.

Mounds View now concedes that its public nuisance claims are preempted and has agreed to dismiss them. Accordingly, Mounds View's claims in No. 4–86–656, and its public nuisance claim in No. 4–86–648 will be dismissed.

Ramsey County has also retreated from its initial claims. Originally it sought a declaration of the validity and effect of its November 18, 1957 board resolution and an injunction enjoining Williams from taking certain actions on the pipeline without its permission. Now it "merely seeks the authority to order Williams to relocate its pipe when the dictates of road construction or road safety so require."

Ramsey County argues that it must retain some control over the pipeline in the same way it retains control over the other utility lines which lie under its roads. It illustrates this need by citing its plans to redesign Long Lake Road. The county asserts it will have to restructure the utility lines, including the pipeline, in order to change the road's route, shift the storm sewers, or lower its surface. The county argues that the license which allowed the pipeline to be built reserved to the county control over it and that this property right is not entirely preempted by the federal safety regulations.

Williams contends that Ramsey County's retreat is either a guise for enforcing the county's safety standards in spite of federal preemption or an effort to deal with a problem that has not yet arisen. Williams notes that allowing control over the pipeline as required for "road construction or road safety" would allow the county to order removal or replacement of the pipeline. Williams suggests that the county's earlier claims and actions indicate it is interested in this power so that it may impose its own safety standards upon Williams. This power, Williams argues, is preempted by the HLPSA. Williams also argues that Ramsey County's alleged concerns for road construction are not ripe for review. It notes that the county has not suggested any current dispute regarding control over its roads. Williams claims that it has cooperated with the county's road restructuring efforts for 30 years and intends to continue cooperating in the future.

The county's concerns about future road work do not present a justiciable issue at this time. Ramsey County has the right to control its roads and the utility lines which run under them, but at some point efforts to affect Williams' pipeline might conflict with federal regulation of it and be preempted. No actual controversy is presented at this time, however, and this area is not ripe for review without a concrete factual setting. Ramsey County's claims should therefore be dismissed without prejudice.

### IV.

Williams has moved for summary judgment granting its claims for permanent injunctive relief. Williams seeks to enjoin Mounds View and Ramsey County from interfering with its pipeline operation to the extent such operation is authorized by the Department of Transportation. The parties have not discussed Williams' claims for injunctive relief in their current memoranda or oral arguments except through their positions on preclusion and preemption.

The HLPSA restricts Mounds View and Ramsey County from regulating Williams' pipeline operations. As previously discussed, OPS's diligent pursuit of administrative enforcement proceedings precludes actions made under 49 U.S.C.App. § 2014(a). In addition, the Act's express preemption provision, 49 U.S.C.App. § 2002(d),[5] makes clear that, at a minimum, state efforts to establish safety standards

---

5. Section 2002(d) provides:

No State agency may adopt or continue in force any safety standards applicable to inter-

state pipeline facilities or the transportation of hazardous liquids associated with such facilities.

for interstate hazardous liquid pipelines are preempted. *See Williams Pipe Line Co. v. City of Mounds View,* 651 F.Supp. 551, 566 (D.Minn.1987). The HLPSA may also preempt other state efforts to control such pipelines. *Cf. Northern Border Pipeline Co. v. Jackson County,* 512 F.Supp. 1261, 1265 (D.Minn.1981) (similar provision of Natural Gas Pipeline Safety Act preempts county ordinance specifying minimum depth of natural gas pipeline whether or not ordinance framed as a safety regulation).

Williams has not shown that the limits imposed on Mounds View and Ramsey County by the HLPSA and OPS's actions entitle it to the entire injunctive relief it seeks. As indicated above, Ramsey County's control over its roads is not entirely preempted by federal law. In addition, it might become possible for Mounds View or Ramsey County to pursue citizen suits pursuant to 49 U.S.C.App. § 2014 if new claims arise which are not precluded by OPS action.

After thoroughly considering the entire record and based on that and previous findings, it appears that Williams is entitled to a permanent injunction in the nature of the preliminary injunction now in place.

## V.

Williams' second motion for partial summary judgment seeks dismissal of Mounds View's claim for punitive damages. Williams argues that punitive damages are not available in Minnesota for actions alleging only property damage. It also asserts that an award of punitive damages under the Minnesota punitive damages provision, Minn.Stat. § 549.20 (1986), would violate the eighth and fourteenth amendments.

■ Williams' contention that punitive damages are not available on property damage claims is based on *Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W. 2d 226 (Minn.1982). *Eisert* held that "punitive damages are not recoverable under a strict products liability theory for property damage." *Id.* at 228. Williams argues that *Eisert's* rationale applies to Mounds View's property damage claims based on

negligence and *res ipsa loquitur* as well as strict liability.

Mounds View argues that the *Eisert* decision departed from both the clear language of the punitive damages statute and the well-settled rule that the appropriateness of punitive damages is dependent upon the conduct of the defendant and not the type of harm inflicted. Mounds View asserts that the distinction made in *Eisert* between personal injury claims and property damage claims should not be expanded beyond the strict products liability area. It notes that Minnesota courts have allowed punitive damages for property damage claims since *Eisert* on theories other than strict liability. *Hydra–Mac, Inc. v. Onan Corp.,* 430 N.W.2d 846, 856 (Minn.Ct.App. 1988) (punitive damages allowed for economic loss claim based on fraud); *Rediske v. Minnesota Valley Beeder's Ass'n,* 374 N.W.2d 745, 752 (Minn.Ct.App.) (punitive damages allowed for property loss claim based on fraud), *review granted on other grounds,* 377 N.W.2d 459 (Minn.1985).

Minnesota's punitive damages statute provides for punitive damages "upon clear and convincing evidence that the acts of defendant show a willful indifference to the rights or safety of others." Minn.Stat. § 549.20 subd. 1 (1986). Minnesota courts have allowed punitive damages on a variety of tort claims where only property damages have been shown. *E.g., Cherne Indus., Inc. v. Grounds & Assocs.,* 278 N.W.2d 81, 95–96 (Minn.1979) (punitive damages allowed on property damage claim for wrongful interference with employment agreements); *Hendrickson v. Grengs,* 237 Minn. 196, 54 N.W.2d 105, 110 (1952) (punitive damages allowed on property damage claim for unreasonable attempt to foreclose mortgage); *see also* Alsop & Herr, *Punitive Damages in Minnesota Products Liability Cases: A Judicial Perspective,* 11 Wm. Mitchell L.Rev. 319, 326 n. 29 (1985). In *Eisert,* the Minnesota Supreme Court chose not to "exten[d]" the remedy to "strict liability actions for injury solely to property." *Eisert,* 314 N.W.2d at 229. The court did not suggest that it intended to overrule the earlier case law

allowing punitive damages for other property damage claims.

Punitive damages are available to punish and deter particularly bad conduct. Generally, the appropriateness of punitive damages is determined by the defendant's conduct and state of mind and not the type of harm caused. Where the type of harm inflicted is largely a matter of coincidence, the deterrent purpose of punitive damages has rarely been thought to be served by limiting the remedy to a particular type of injury.

*Eisert* appears to rest, in part, on the unique aspects of strict products liability law. Minnesota courts have not expanded its holding and continue to award punitive damages for other property damage claims. *E.g., Hydra–Mac, Inc. v. Onan Corp.,* 430 N.W.2d 846, 856 (Minn.Ct.App.1988).[6] Williams cites no case other than *Eisert,* from Minnesota or any other state, which has limited punitive damages only for property damage claims. A review of Minnesota law shows that punitive damages may be available for Mounds View's property damage claims based on negligence and *res ipsa loquitur* but they are precluded for any strict liability claim.

█ Williams also asks this court to dismiss Mounds View's punitive damages claim on constitutional grounds. It contends that any award of punitive damages would violate the eighth amendment's proscription against excessive fines and that Minn.Stat. § 549.20 violates the due process clause of the fourteenth amendment. It argues that the statute is impermissibly vague in the guidance it provides the trier of fact and that it fails to give fair notice to defendants of the punishment which may be imposed.

Williams has not shown that the Constitution requires dismissal of Mounds View's punitive damages claim on summary judg-ment. It has not cited any case holding this old and often-sought remedy unconstitutional.[7] Only after trial will it be known what amount of punitive damages, if any, might be awarded. Under these circumstances, the motion for summary judgment should be granted only to the extent that punitive damages may not be sought on Mounds View's strict liability claim.

## VI.

Many of the claims in these three cases are resolved in this order. Ramsey County's claims and Mounds View's public nuisance claims and citizen suit are dismissed. Williams' requests for declaratory and injunctive relief are concluded. All that remains unresolved are the City of Mounds View's claims for compensatory and punitive damages. As a result, Williams' motion to bifurcate the opposing parties' "regulatory" claims from Mounds View's damage claims is moot since their claims for injunctive and declaratory relief will be dismissed.

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. The claims of Ramsey County in No. 4–86–651 are dismissed without prejudice.

2. The claims of Mounds View in No. 4–86–656 are dismissed with prejudice.

3. The claims of Mounds View in count one (citizen suit) and count two (public nuisance) of its amended counterclaim in No. 4–86–648 are dismissed with prejudice.

4. Williams' motion for a permanent injunction is granted as follows:

a. The City of Mounds View, Jerome W. Linke, Donald F. Pauley, Barbara A. Haake, Susan Hankner, Phyllis I. Blanchard, Gary C. Quick, and all their employees and agents are prohibited from hindering or interfering with operation of

---

6. *See also* Alsop & Herr, *supra,* at 326 ("If ... negligence, breach of warranty, or misrepresentation claims [for property damages] were present in the case, the punitive damages allegation would be proper and not subject to dismissal.").

7. The court is aware, of course, that the state of the law may change. The United States Supreme Court recently agreed to review a case in which a punitive damage award was held not to violate the eighth amendment. *Kelco Disposal, Inc. v. Browning–Ferris Indus.,* — U.S. —, 109 S.Ct. 527, 102 L.Ed.2d 559, *granting cert. to* 845 F.2d 404 (2d Cir.1988).

the pipeline of Williams Pipe Line Company to the extent that such operation is authorized by the United States Department of Transportation and does not exceed 900 p.s.i.g.

b. The County of Ramsey and all its employees and agents are prohibited from hindering or interfering with operation of the pipeline of Williams Pipe Line Company to the extent that such operation is authorized by the United States Department of Transportation and does not exceed 900 p.s.i.g.

5. The claims of Williams Pipe Line Company for declaratory relief in No. 4–86–648 and No. 4–86–651 are dismissed without prejudice.

6. The claim of Mounds View for punitive damages in No. 4–86–648 is dismissed with prejudice only insofar as it is based on a strict liability property damage claim.

7. The motion of Williams Pipe Line Company for bifurcation is dismissed as moot.