Greyson B. MORROW, Plaintiff,

v.

AIR METHODS, INC., Defendant.

Civ. No. 4–92–1263.

United States District Court,
D. Minnesota,
Fourth Division.

May 11, 1995.

Thomas A. Harder, Jane Lanoue Binzak and Jardine, Logan & O'Brien, St. Paul, MN, for plaintiff.

Stephen J. Merker, Christopher M. Leh and Davis, Graham & Stubbs, Denver, CO, Sally A. Scoggin and Briggs & Morgan, St. Paul, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion for summary judgment on plaintiff's claim for punitive damages. Based on the file, record and proceedings herein, and for the reasons stated below, the court grants defendant's motion

## BACKGROUND

Plaintiff Greyson B. Morrow was employed by defendant Air Methods, Inc. in St. Paul, Minnesota, as a pilot from April 7, 1985, until his discharge on May 24, 1992. Morrow filed suit and asserted claims against Air Methods for illegal retaliation under Minnesota's whistleblower statute, wrongful discharge in violation of public policy, breach of contract, promissory estoppel, infliction of emotional distress and misrepresentation. Air Methods moved for summary judgment. On May 27, 1994, the court denied summary judgment on the claims for retaliatory discharge in violation of Minn.Stat. § 181.932 and breach of contract and granted summary judgment in favor of Air Methods on the rest of Morrow's claims.

■ Also in May 1994, Morrow brought a motion to amend his complaint to add a count for punitive damages based on his claim that Air Methods illegally retaliated against him for refusing to violate federal safety standards. Morrow's motion was granted by the magistrate judge on May 26, 1994. Air Methods then sought and was granted leave to file a motion for summary judgment on Morrow's claim for punitive damages. At the outset, Morrow argues that the summary judgment motion must be denied because the magistrate judge allowed him to amend his complaint and Air Methods did not appeal the order. By the same token, however, the magistrate judge granted Air Methods' leave to file a motion for summary judgment on the newly asserted punitive damages claim and Morrow did not contest that ruling. In any event the issue presented and the standard applied on a motion to amend differ from a motion for summary judgment. The issue decided by the magistrate judge was not Morrow's entitlement to punitive damages but his entitlement to allege those damages. The magistrate judge's grant of leave to amend does not bind the court or preclude it from considering the merits of Air Methods' motion for summary judgment.

## DISCUSSION

■ The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Id. at 249, 106 S.Ct. at 2510.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. Id. at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving

party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511–12. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

The parties agree that Morrow cannot recover punitive damages for breach of contract. Air Methods contends that punitive damages are not recoverable under Minn. Stat. § 181.932. Morrow responds that the whistleblower statute provides for any remedy available at law including punitive damages. Air Methods also asserts that the evidence is insufficient to support an award of punitive damages.

### 1. Recoverability of Punitive Damages

■ A cause of action for wrongful discharge based on the public policy exception to the employment-at-will doctrine was first recognized by the Minnesota Court of Appeals in *Phipps v. Clark Oil & Refining Corp.*, 396 N.W.2d 588 (Minn.Ct.App.1986), *aff'd*, 408 N.W.2d 569 (Minn.1987). The exception provides that an employer is subject to tort liability if it discharges an employee for reasons that contravene a clear mandate of public policy. In the course of explaining that the cause of action sounded in tort rather than contract, the Court of Appeals stated:

> A significant difference between these theories is the measure of damages. From the standpoint of damages and the conceptual framework which supports the action, we believe it is properly based in tort.

*Phipps*, 396 N.W.2d at 592–93 (footnote omitted). The Minnesota Supreme Court ad-

dressed whether punitive damages were available for discharges in violation of public policy. *Phipps*, 408 N.W.2d at 572. The Court held that such damages were appropriate given the nature of the cause of action and the legislative intent and policy considerations of Minn.Stat. § 549.20. *Id.*[1]

While the *Phipps* case was pending before the Minnesota Supreme Court, the state legislature codified the public policy exception by enacting Minn.Stat. § 181.932 *et seq.* The statute provides in part:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because.... (c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

Minn.Stat. § 181.932, subd. 1(c). The legislature also included a broad remedial provision:

> In addition to any remedies otherwise provided by law, an employee injured by a violation of section 181.932 may bring a civil action to recover any and all damages recoverable at law, together with costs and disbursements, including reasonable attorney's fees, and may receive such injunctive and other equitable relief as determined by the court.

Minn.Stat. § 181.935(a).

■ Despite the breadth of § 181.935(a), Air Methods contends that Minnesota's whistleblower statute does not allow for the recovery of punitive damages. Because the act does not explicitly refer to punitive damages, Air Methods asserts that a violation of the statute does not provide a

---

1. The court stated that retaliating against an employee for refusing to follow orders to violate a law is conduct that is uniformly condemned. *Id.* The court also noted that punitive damages were appropriate because otherwise such wrongs may go unredressed. *Id.* Finally, the court

found that punitive damages served a desirable deterrent effect in public policy exception cases. *Id.* Although the court concluded that punitive damages were available, it declined to impose such damages in the case in which the public policy exception was recognized. *Id.* at 573.

proper basis for an award of punitive damages under Minn.Stat. § 549.20.[2] The court disagrees. Section 181.932 codified the existing common law tort of wrongful discharge in violation of public policy. Compensatory and punitive damages are generally permitted for intentional torts. While the statute does not explicitly refer to "punitive damages" it does provide for the recovery of "any and all damages recoverable at law." Minn.Stat. § 181.935(a). Legal relief is commonly understood to include compensatory and punitive damages. There is no indication that the Minnesota legislature intended to restrict the common law remedies when it enacted the whistleblower statute. As plaintiff's counsel notes, while the legislature could have been more precise it is hard to imagine a broader grant of remedies.

Air Methods relies on cases holding punitive damages are not recoverable under Minnesota's dram shop act and wrongful death statute. *See Coughlin v. Radosevich,* 372 N.W.2d 817 (Minn.Ct.App.1985) and *Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226 (Minn.1982). Those cases are not analogous and, thus, have little import to the issue presented here. Unlike the cause of action for retaliatory discharge in violation of public policy, the cause of action for wrongful death does not codify the common law. Rather, the cause of action for wrongful death is a statutory creation intended to correct an inequity which existed at common law. *Eisert,* 314 N.W.2d at 228. The wrongful death statute applicable in *Eisert* provided only for the recovery of "pecuniary loss" resulting from the wrongful death. *See* Minn.Stat. § 573.02, subd. 1 (1980). The Minnesota Supreme Court concluded that the reference to "pecuniary loss" evinced a legislative intent to preclude recovery of punitive damages. *Eisert,* 314 N.W.2d at 228.[3]

The cause of action against a liquor vendor in the Dram Shop Act is also a creation of statute not common law. The plaintiff in *Coughlin* attempted to liken his dram shop action to cases where courts allowed an award of punitive damages in actions against intoxicated drivers. The Court of Appeals stated:

> There is a significant distinction between an action against an intoxicated driver and a dram shop action against a liquor vendor. An action against an intoxicated driver has its roots in common law. In contrast, a cause of action against a liquor vendor exists only by virtue of enactment of the Dram Shop Act.

*Coughlin,* 372 N.W.2d at 820. The version of the Dram Shop Act applicable in *Coughlin* authorized an injured party to recover all damages sustained for injuries to "person or property, or means of support." Minn.Stat. § 340.95 (1980). The court concluded that the statutory language did not authorize a recovery of punitive damages. *Coughlin,* 372 N.W.2d at 820.

Air Methods also argues that the legislative intent not to allow recovery of punitive damages under § 181.932 is shown by comparing the whistleblower statute to other statutes which explicitly authorize punitive damages.[4] The statutes relied on by Air Methods do not codify causes of action which existed at common law. Rather, each statute grants specific rights and remedies not previously recognized. In contrast, the whistleblower statute codified an existing common law right and the remedies which accompanied that right. The cause of action codified in § 181.932 sounds in tort and allows for the recovery of punitive damages.

### 2. Morrow's Claim for Punitive Damages

Having concluded that punitive damages are recoverable under Minnesota's whistle-

---

**2.** Subdivision 1(a) of Minn.Stat. § 549.20 states: Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.

**3.** Subsequently the Minnesota legislature amended the wrongful death statute to permit recovery of punitive damages.

**4.** *See* Minn.Stat. § 573.02, subd. 1 (wrongful death); Minn.Stat. §§ 363.071, subd. 2 & 363.14, subd. 2 (Minnesota Human Rights Act); Minn. Stat. § 176.82 (statute prohibiting retaliation for seeking worker's compensation benefits); Minn. Stat. § 182.666, subd. 5(a) (state occupational health and safety violations).

blower statute, the court next examines whether Morrow has made a sufficient showing to withstand summary judgment on the merits of his claim. In addition to his breach of contract claim, Morrow contends that Air Methods fired him because he was not willing to bend federal requirements and be a "team player." Morrow alleges that Air Methods illegally discharged him for insisting on pre-flight checks required by federal regulations and refusing to fly when it would violate federal rest requirements. While it is not disputed that on at least two occasions Morrow refused to violate federal aviation standards, Air Methods denies retaliating against Morrow for refusing to violate those standards.

■ Given the breadth of the arguments advanced by Morrow in support of his claim for punitive damages, it is appropriate for the court to delineate the limits of that claim. The predicate for the punitive damages claim is the cause of action under § 181.932 not Morrow's breach of contract claim. The whistleblower statute does not protect Morrow from erroneous or arbitrary personnel decisions, but only from decisions which are unlawfully motivated by an employee's refusal to violate a law, rule or regulation.

■ Morrow asserts that Air Methods deliberately disregarded rights conferred on him by company policy. Morrow claims he was terminated because he refused to violate company policy; he also alleges that other disciplinary action taken against him by Air Methods contravened its own policies. These actions cannot serve as a basis for an award of punitive damages, however, as they do not implicate the whistleblower statute. The whistleblower statute covers only the kind of wrongdoing that breaches clearly mandated public policy. *Vonch v. Carlson Companies, Inc.*, 439 N.W.2d 406 (Minn.Ct.App.1989). While the actions of Air Methods may be relevant to certain issues such as intent, its alleged violation of company policy involves internal management problems and fails to implicate clearly mandated public policy.

■ Air Method contends that the record is devoid of any evidence which supports an award of punitive damages. Punitive damages may be recovered only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others. Minn.Stat. § 549.20, subd. 1(a). The statute provides a detailed definition of "deliberate disregard":

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others; and

> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or

> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

*Id.* § 549.20, subd. 1(b). Under this standard, the court must determine whether the evidence is sufficient to permit a jury to conclude that it is highly probable that defendant acted with deliberate disregard to the rights or safety of others. While it may not make credibility determinations, the court must ascertain whether a jury could reasonably find that plaintiff proved his case by the quality and quantity of evidence required by Minnesota law.

■ Morrow alleges that Air Methods illegally discharged him for insisting on pre-flight checks required by federal regulations and refusing to fly when it would violate federal rest requirements. The pre-flight check incident occurred on March 14, 1992. Morrow also cites to three disputes involving federal rest and duty requirements. One incident occurred in early 1991, another within a year of Morrow's termination and the third on March 15, 1992.[5]

Air Methods asserts that Morrow has failed to show any causal connection between this conduct and his termination or any other adverse employment action. The court con-

---

**5.** While Air Methods concedes that Morrow's refusal to fly on March 15, 1992, was justified by federal rest requirements, it denies that Morrow was requested to violate federal standards on the two 1991 incidents cited by Morrow.

cludes that there is circumstantial evidence which raises a question of material fact concerning the causal connection between Morrow's protected conduct and his termination.

Aside from showing that his discharge occurred two months after he engaged in protected conduct, Morrow has offered evidence which, when taken in his favor, shows that Air Methods has given differing reasons for his termination. According to Morrow, he was first told that he was discharged because he was uncooperative and coerced and manipulated other pilots. Air Methods later asserted that in addition to being disruptive, Morrow was terminated because he was unable to get along with Life Link III, a major client of Air Methods. Finally, Air Methods alleged that Morrow had engaged in a conspiracy to leak confidential information to its competitor American Air Ambulance. Morrow has also produced evidence which, when taken in his favor, tends to cast doubt on the latter reasons proffered by Air Methods. Although a reasonable jury could find that Morrow's contentious, adversarial attitude toward other Air Methods personnel led to his termination, it could also find the reasons given by Air Methods are without merit and, in the case of the alleged leak of confidential information, wholly contrived.

■ The evidence, while by no means unequivocal, is sufficient to permit a jury to infer that Air Methods discharged Morrow for refusing to violate federal aviation regulations. Punitive damages, however, may only be awarded when a defendant's conduct reaches a threshold level of culpability. Morrow cites to conduct which, he claims, reflects clear and convincing evidence that Air Methods deliberately disregarded his right to be free from illegal retaliation: (1) he was fired by Air Methods two months after he refused orders that he believed violated federal regulations; (2) after those refusals Morrow was criticized for not being a team player and received poor management reports; (3) in response to his protesting this treatment Morrow received negative letters from Air Methods; and (4) his requests for explanation from Air Methods went unanswered. The evidence also shows, however, that while Morrow's immediate supervisor was initially upset with him over the March 1992 incidents, Air Methods later acknowledged that Morrow acted properly on both occasions.

■ Employees have a right to refuse to follow an order to violate a law without fear of reprisal. The deliberate disregard of that right by a defendant, if proved, may warrant an award of punitive damages. Thus, in appropriate cases, a liability determination on the underlying whistleblower claim may suffice to meet the clear and convincing standard of § 549.20. The case before the court, however, is not such a case. Although Morrow states a viable claim of retaliatory discharge, the evidence taken in the light most favorable to Morrow fails to meet the quality and quantity of evidence required by Minnesota law to support an award of punitive damages. Accordingly, a reasonable jury could not find by clear and convincing evidence that Air Methods deliberately disregarded Morrow's right to be free from illegal retaliation.

### CONCLUSION

The court concludes that punitive damages are recoverable as a remedy under Minn. Stat. §§ 891.932 and 891.935. However, the heightened threshold for awarding punitive damages has not been met here. The court holds that the evidence provided by Morrow is insufficient to permit a jury to find, by clear and convincing evidence, that Air Methods acted with deliberate disregard to the rights or safety of Morrow. Based on the foregoing, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment on plaintiff's claim for punitive damages is granted.