Natalie GROSFIELD, individually, Natalie Grosfield, Trustee for the next of kin of Brett Grosfield, et al., Petitioners,

v.

CLEARWATER CLINIC, d.b.a.
Clearwater Clinic, P.A., et al.,
Respondents.

No. C9-87-2028.

Supreme Court of Minnesota.

Jan. 15, 1988.

---

Kenneth W. Green, Minneapolis, for petitioners.

Jane C. Voglewede, Fargo, N.D., for Clearwater Clinic.

Richard L. Pemberton, Fergus Falls, for Frederick Martin.

SIMONETT, Justice.

The court of appeals reversed the trial court's order bifurcating the trial of this medical malpractice action. We affirm.

On October 29, 1979, Dr. Frederick Martin delivered Natalie Grosfield's twin babies. The first twin was stillborn and the second, Brandon, lived for 3 years. Two days after the twins' births, Dr. Martin performed a tubal ligation on the mother. Plaintiffs now sue Dr. Martin and his Clearwater Clinic for the wrongful deaths of the twins and for medical malpractice in sterilizing the mother. Within hours of his birth, Brandon was transferred to Fargo and the care of the Fargo Clinic doctors, but in the next 2 or 3 days, the baby developed an intestinal condition known as necrotizing enterocolitis (NEC), which resulted in his death 3 years later. Plaintiffs also sued the Fargo Clinic for Brandon's death, alleging malpractice which brought on the NEC. (Suits against the hospitals involved were settled.)

On October 2, 1987, the trial court began a 3-day pretrial conference for the trial scheduled for October 13. The liability issues were complex. Twenty doctors were listed by the three parties as possible witnesses. Plaintiffs had some 127 photographs and slides of baby Brandon taken over the 3 years of his life during which he had multiple surgeries and was fed much of the time intravenously. Pointing out that the action was for Brandon's wrongful death, for which damages are limited to the pecuniary loss of the next of kin, the defendant doctors moved for an order limiting the evidence plaintiffs could introduce in Brandon's case. Defendants conceded that the cause of Brandon's death was NEC, but they denied their conduct caused this condition. They further agreed to stipulate to Brandon's medical expenses of over $400,000, which would be relevant if causal fault were proven.

On October 5, the trial court entered its pretrial order, which provided that upon defendants stipulating to the cause of Brandon's death and the expenses of his care and treatment,

the Defendant's Motion is granted whereby the Plaintiffs may not introduce before the jury, evidence of Brandon Grosfield's care and treatment after November 1, 1979, and they shall be precluded from introducing evidence of expenses of such care and treatment, or any evidence of pain and suffering of Brandon Grosfield prior to his death except insofar as such evidence may be appropriate for other purposes * * *.

In the final paragraph of its pretrial order, the trial court further ordered that the trial would be bifurcated, with the liability issue being tried first and the issue of damages, if liability were found, to follow with the same jury.

Plaintiffs do not complain about the trial court's evidentiary ruling, but they do object to bifurcation. Plaintiffs sought an emergency writ of prohibition to the court of appeals, which on October 9 granted the petition and vacated the bifurcation order, basically because it appeared the trial court had not ordered bifurcation on the particular merits of the case but as a matter of general policy in all medical malpractice actions. This court denied further review. When the case returned to the trial court, defendants moved for bifurcation. On October 13, the same day trial was to start, the trial court again ordered bifurcation, this time setting out its reasons why, in

this particular case, separate trials were necessary. Once again plaintiffs returned to the court of appeals with another petition for writ of prohibition. Again the appellate court reversed the trial court. We granted defendants' petition for further review.

The issue here is whether the trial court exceeded what should be the bounds of its discretion. Minn.R.Civ.P. 42.02 provides:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim * * * or of any separate issue.

If bifurcated trials are not common, it is simply because situations requiring separate trials do not occur all that frequently. But when a bifurcation question arises, the trial court resolves the problem by applying the criteria of convenience, prejudice, expedition, and economy. These practicalities are best dealt with by the trial court. Each case stands on its own facts and circumstances, and appellate courts can add little to the criteria set out in Rule 42.02 for the trial court's guidance. It follows, therefore, that appellate courts should defer to the trial court's greater familiarity with the logistical and strategic aspects of the litigation and should rarely interfere with the trial court's exercise of its discretion. *Jensen v. Peterson,* 264 N.W.2d 139, 144 (Minn.1978) (trial court has "wide discretion" in ordering separate trials).

In this case, however, with its unusual circumstances, we cannot say the court of appeals abused its discretion in issuing a writ of prohibition. Because of concern that some language in the court of appeals' decision might be construed to be unduly restrictive of trial court discretion, we write to set out what we believe is the decisive consideration in our allowing the court of appeals' decision to stand.

Plaintiffs are troubled by the timing of the bifurcation order (coming so late) and the disruption of their scheduling of witnesses, some from a great distance, and they claim that trying damages separately decreases their chances of winning on lia-

bility. If this were all, we would be inclined to leave the trial court's order alone, but a closer look reveals that these considerations are dependent upon and secondary to the major problem of how to avoid unfair prejudice in the trial of the issues involved.

The primary reason for the bifurcation order was, as the trial court explained in its October 13 order, "that sympathy, passion and prejudice will be aroused in the jury by damages evidence which will improperly affect and influence the jury's determination of issues of liability." The trial court was concerned that the emotionally charged evidence of baby Brandon's unsuccessful 3–year fight for life would keep the jury from fairly considering the liability issues, which required the jury to focus on the events leading up to and for a few days after Brandon's birth. This was a legitimate concern. If Brandon had lived and was suing for his personal injuries, this prejudice factor might weigh in favor of a decision to bifurcate, but this was a wrongful death action for pecuniary loss damages. The trial court resolved the potential prejudice problem by its pretrial order excluding evidence of plaintiff's care and treatment after November 1, 1979, and by excluding any evidence of Brandon's pain and suffering. It appears the trial court decided to order a separate trial on damages (which defendants in their original pretrial motion had not requested) simply to protect its evidentiary ruling against being "vitiated."

It seems to us, however, if the order restricting evidence about the post-birth events of Brandon's life is adhered to, then any unfair prejudice in the jury's consideration of the liability issues is removed. In other words, although we can appreciate the trial judge's concern, there appears to be no need for the extraordinary remedy of bifurcation as a precautionary measure. The evidence on pecuniary loss for the wrongful deaths of the twins, as well as damages for sterilization of the mother, does not involve much in the way of medical testimony additional to that which will come in on liability. The evidence on dam-

ages—pecuniary loss and inability to bear children—will not unfairly prejudice the liability issues, and this evidence, by its very nature, will be relatively brief. Significantly, defendants' assertions to the contrary are unsupported by any specific facts or circumstances.

We affirm the issuance of the writ by the court of appeals vacating the bifurcation order of October 13.

Affirmed.

YETKA, J., concurs specially.

POPOVICH, J., took no part in the consideration or decision of this case.

YETKA, Justice (concurring specially).

While I concur in the result, I feel there was no necessity in our accepting this petition for review. In my opinion, the court of appeals carefully reviewed the matter, and we had no basis to accept the appeal under the proper scope of review normally adhered to.