TRAVELERS INSURANCE COMPANY, Respondent,

v.

HORSESHOE LAKE FARMS, INC., Defendant,

Frances Gerzewski, individually and as personal representative of the Estate of Adrian Gerzewski, Appellant,

Raymond Campbell, et al., Jack W. Hanson and R. D. Offutt Company, Respondents.

No. CX–89–1748.

Court of Appeals of Minnesota.

May 29, 1990.

454

Raymond A. Haik, Robert C. Moilanen, Linda S. Friedner, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for appellant.

Dennis J. Neeser, Willmar, for Travelers Ins. Co.

John D. Quinlivan, Quinlivan, Sherwood, Spellacy & Tarvestad, St. Cloud, for Raymond Campbell, et al.

Jack W. Hanson, Minneapolis, pro se.

Maclay R. Hyde, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for R.D. Offutt Co.

Considered, and decided by LANSING, Presiding Judge, and PARKER and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant Frances Gerzewski challenges the trial court's jury instruction that intent of the parties may be considered in determining when property is acquired, and the trial court's refusal to instruct the jury on the doctrine of waiver. In addition, respondent Travelers Insurance Company (Travelers) challenges the jury's finding that it failed to make a proper mailing of the notice of the right of first refusal. We affirm on all issues.

## FACTS

Horseshoe Lake Farms, Inc. (HLF) was incorporated in Minnesota in 1973 with seven shareholders, including Adrian Gerzewski and respondents Raymond Campbell, George Campbell, Edward Campbell (Campbells), and Jack Hanson. In 1974, HLF purchased approximately 2104 acres of agricultural land located in Todd County (the property). In the course of its operations HLF incurred a number of substantial debts. By 1983, HLF's debt to Travelers, including a mortgage on 1165 acres of the property, exceeded $3.2 million. These debts were personally guaranteed by HLF's shareholders.

HLF was experiencing financial difficulties. In the spring of 1983, HLF agreed to give Travelers a deed in lieu of foreclosure in exchange for cancellation of HLF's debt to Travelers, the release of the mortgage, and the release of the shareholders from personal liability. Travelers also agreed to lease the land back to HLF from August 1, 1983, to December 1, 1985.

On November 25, 1983, the HLF shareholders, Adrian Gerzewski, Hanson, and the Campbells, executed a corporate resolution authorizing the execution of documents evidencing the agreement "made and entered into as of the 1st day of August, 1983" between HLF and Travelers. On December 14, 1983, the deed to the property was delivered and the Agreement (deed in lieu of foreclosure), Lease Agreement, and General Warranty Deed were executed by the parties. By agreement of *all* parties, each of these documents was back dated to August 1, 1983. Also on December 14, 1983, HLF paid to Travelers rent on the property for the period of August through December 1983, pursuant to the Lease Agreement.

Travelers released HLF from its debt obligations, including the mortgage and the personal guaranties of its shareholders, as of August 1, 1983. In addition, Travelers' release of the liens on the property allowed HLF to enter into a purchase agreement on November 4, 1983, to sell 817 acres of land. HLF used the proceeds of this sale to pay other outstanding debts.

In 1983, HLF subleased the property to Adrian Gerzewski. When Travelers increased the rent in 1985, Gerzewski refused to pay the increased rent, and the land was subsequently leased to R.D. Offutt Company (Offutt) in the spring of 1986. Offutt continued to rent the property through the time of trial in 1989.

In 1988, Offutt and Travelers negotiated a sale of the property to Offutt. Offutt signed and returned the contract to Travelers on July 1, 1988. This contract was expressly conditioned on the former owner not exercising a right of first refusal under Minn.Stat. § 500.24. Travelers' regional director signed and dated the form contract of sale on August 4, 1988. Travelers received Offutt's commitment letter securing financing on August 26, 1988.

On June 27, 1988, Travelers mailed a notice of offer for sale to HLF. This notice did not comply with the statutory form

mandated by Minn.Stat. § 500.24, subd. 7. The notice was sent to Hanson who was HLF's registered agent. Hanson notified Travelers that he was no longer an appropriate party to receive the notice, and requested that notices be sent to the HLF shareholders. Travelers subsequently placed a memorandum in its file acknowledging that notices of the right of first refusal should be sent to Gerzewski and the Campbells. On June 28, 1988, Travelers mailed a notice of offer for sale to Gerzewski and to the Campbells.

On August 30, 1988, after the contract to sell the property to Offutt had been accepted by Travelers, a Notice to Buy Agricultural Land was sent to Hanson. It was not until September 20, 1988, that Gerzewski received Travelers' Notice to Buy Agricultural Land. This notice stated in part that:

> UNDER MINNESOTA STATUTES, SECTION 500.24, SUBDIVISION 6 AN OFFER FROM THE TRAVELERS INSURANCE COMPANY MUST BE MADE TO YOU AT A PRICE NO HIGHER THAN THE HIGHEST OFFER MADE BY ANOTHER PARTY. * * * THE PRICE IS OFFERED ON THE FOLLOWING TERMS: CASH IN THE AMOUNT OF $1,055,107.43.

After Gerzewski learned that HLF and the other shareholders were not interested in purchasing the property, appellant sought financing and legal counsel in an attempt to exercise the statutory right of first refusal. Appellant accepted Travelers' Offer to Buy Agricultural Land but failed to perform according to the terms of the offer.

On October 17, 1988, Travelers commenced a declaratory judgment action seeking a determination that Minn.Stat. § 500.24, subds. 6 and 7, did not apply because any actual sale would occur after Travelers had held the property over five years, and a declaration that it had com-

plied with the statutory notice provisions of section 500.24, subds. 6 and 7. Gerzewski counterclaimed alleging, *inter alia*, that Travelers waived its right to assert that it need not comply with the statute.

The trial court bifurcated the action because a variety of other claims had been raised by the parties.[1] The issues relating to Minn.Stat. § 500.24, and the right of Travelers to sell the property were tried to a jury. Gerzewski objected to the court's instruction permitting the jury to consider the intent of the parties in deciding when Travelers acquired the property. Gerzewski also objected to the court's refusal to instruct the jury on the doctrine of waiver.

The jury returned a special verdict, finding that (1) Travelers acquired or began to hold the property on August 1, 1983; (2) Travelers did not make proper mailing of the right of first refusal; (3) The notice of right of first refusal prepared by Travelers was proper; (4) Gerzewski did comply with the statute when accepting the offer to purchase; and (5) Gerzewski did not perform according to the terms of the offer. In its order for judgment, the trial court adopted the jury's special verdict as its findings of fact. In its amended order for judgment, the trial court concluded that Travelers could sell the property[2] and made its order appealable pursuant to Minn.R.Civ.P. 54.02.

## ISSUES

1. Did the trial court's jury instructions accurately reflect the law on the transfer of real property?

2. Was the jury's finding that Travelers failed to make a proper mailing of the notice of the right of first refusal contrary to the evidence?

## ANALYSIS

■ The primary dispute on appeal concerns the date that Travelers is deemed to

---

1. The remaining issues to be tried concern the operation and ownership of HLF. Gerzewski and Offutt have asserted a number of cross-claims and counterclaims which raise issues not involving Travelers. Because these claims are distinct from the issues concerning Travelers'

right to sell the property, the trial court bifurcated the trial.

2. Travelers subsequently sold the property to Offutt in accordance with the contract of August 1988.

have acquired the property under Minn. Stat. § 500.24, subd. 6. This date determines the expiration of the five year period in which the former owner has a statutory right of first refusal. The agreement to transfer the property to Travelers and the deed to the property were not executed and delivered until December 14, 1983. All parties agreed, however, that the written agreements, deed, and corporate resolution authorizing the transaction were to be effective as of August 1, 1983, and each of these documents was back dated to August 1, 1983. Appellant argues that the expiration of the period in which Travelers was required to provide the former owner with a notice of right of first refusal was artificially shortened by allowing the jury to consider the intent of the parties as to when Travelers actually acquired the property.[3] Appellant argues vigorously that December 14, 1983, is the date of acquisition as a matter of law. We disagree and find that the jury was properly allowed to consider intent, and that the record supports the jury's finding.

## I.

*Jury Instructions*

Appellant challenges the trial court's instruction to the jury that intent of the parties may be considered in determining when Travelers acquired the property, and the failure of the trial court to instruct the jury on the doctrine of waiver.

■ Instructions to the jury must as a whole convey a clear and correct understanding of the law. *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986). The first instruction appellant challenges is that which permitted the jury to consider the parties' intent. The trial court instructed the jury:

> You must decide when Travelers acquired or began to hold the property in question. This means that you must determine when the parties, Travelers and Horseshoe Lake Farms, intended the

ownership of the land to change; at the time that they agreed to the Deed in Lieu of Foreclosure arrangement, at the time of the closing or at some other time. In determining the parties' intent, you may consider the relevant writings, actions and words of the parties.

Minn.Stat. § 500.24, subd. 6(a) provides that a corporation may not sell agricultural land that was acquired by enforcing a debt against land, including accepting a deed in lieu of foreclosure, before offering or making a good faith effort to offer the land for sale to the immediately preceding former owner at a price no higher than the highest price offered by a third party that is acceptable to the seller. This statutory right of first refusal applies to the seller *"for five years after the agricultural land is acquired * * *."* Minn.Stat. § 500.24, subd. 6(e) (emphasis added). The right of first refusal need not be given when the seller has held the property for five years or longer. *See* Minn.Stat. § 500.24, subd. 6(g). Thus, the date that the property was acquired or first held must be determined to establish whether the former owner is entitled to the right of first refusal. The primary question raised by this appeal is whether intent may be considered in determining when a party acquires or begins to hold property under Minn.Stat. § 500.24, subd. 6.

The meaning of "acquired" under section 500.24, subd. 6 was considered by this court in *Harbal v. Federal Land Bank of St. Paul,* 449 N.W.2d 442 (Minn.App.1989), *pet. for rev. denied* (Minn. Feb. 21, 1990). In *Harbal,* the mortgagors of agricultural land brought an action against the mortgagee, Federal Land Bank, to recover for violation of the statutory right of first refusal. Federal Land Bank had foreclosed on the mortgaged property and subsequently received a sheriff's certificate for the property. Federal Land Bank argued that as a holder of a sheriff's certificate, title to the property does not vest until the statutory redemption period has run.

**3.** Simply put, if the month of acquisition is December, a five-year statute is relevant and benefits appellant. If the month of acquisition is August, the five-year statute in issue is not applicable, and that benefits respondent.

Since Federal Land Bank had assigned the sheriff's certificate to a third party before the redemption period had run, it argued that title could never have vested, and thus it had never "acquired" the property within the meaning of Minn.Stat. § 500.24, subd. 6.

This court rejected that technical construction as inconsistent with the act's purpose and determined that the legislature had

> clearly expressed [a] preference that foreclosed property remain in the possession of its former owner whenever possible. If the term "acquire" were interpreted to mean when title actually vests in the lending corporation, the right of first refusal would be denied to the former owner during the redemption period following the foreclosure sale. * * * The remedial purposes of the statute will be better served by a broader construction of the term "acquire" to include the interests acquired on the date of the sheriff's sale.

*Id.* at 447. Thus, the court applied an expansive reading of the statute, refusing to limit "acquire" to mean only when title actually vests.

In this case, the trial court concluded that the time a deed takes effect is a factual question for the jury. In reaching this conclusion, the court relied on *First Minneapolis Trust Co. v. Lancaster Corp.*, 185 Minn. 121, 240 N.W. 459 (1931), and *Kammrath v. Kidd*, 89 Minn. 380, 382, 95 N.W. 213, 214 (1903). In both of those cases, the Minnesota Supreme Court held that the intent of the parties may be considered in determining when a deed takes effect. Accordingly, here the trial court properly instructed the jury to consider the intent of the parties in determining when Travelers acquired or began to hold the property.

Appellant argues that the jury should have considered only the actual delivery of the deed on December 14 to determine when Travelers acquired the property. This argument is not persuasive. On these facts, the jury was entitled to find that the proper focus was not December when legal title technically passed, but rather August 1 pursuant to the clear expression of the parties. We affirm the jury's analysis that the property was "acquired" or "held" under Minn.Stat. § 500.24, subd. 6, as of August 1, 1983. Travelers was, therefore, not required to give appellant the statutory right of first refusal as the five year period had expired.

■ Appellant also argues that policy considerations mandate a liberal construction of the terms "acquire" and "held" to grant a family farmer (appellant) the right to retain or repurchase a family farm. This argument is misplaced. First of all, appellant is not a member of the class of persons the legislature sought to protect in enacting the statute. Both appellant and respondent Offutt are extremely large commercial potato operations, not family farms. Appellant is a North Dakota business, owning land in both Minnesota and North Dakota. It is questionable whether the Minnesota Family Farm Act was intended to include large out-of-state commercial operations. However, we do not need to consider this question. Even assuming that appellant may be protected by the Act, the five year time period within which a previous owner would be entitled to notice of the right of first refusal had expired at the time Travelers sold the land to Offutt.

■ The decision to back date all the documents regarding the transfer to August 1, 1983, was a fully informed, bargained for, consensual decision by all parties. Adrian Gerzewski himself signed the corporate resolution authorizing August 1, 1983, as the effective date of the transfer. Appellant enjoyed the benefits of the agreement to back date the transaction. The deed in lieu of foreclosure shielded him from a potential deficiency judgment of several hundred thousand dollars, and the release of the mortgage allowed HLF to sell 817 acres of land and use the proceeds to pay other outstanding debts. Both Travelers and HLF accepted the benefits of the transfer of the property as of August 1, 1983, and the trial court properly in-

structed the jury on the doctrine of estoppel:

A person who knowingly accepts the benefits of a transaction may not thereafter deny the terms and the conditions of the transaction and is thereafter estopped from denying the terms and the conditions of the transaction. Estoppel precludes a party from asserting rights which it would otherwise have.

Appellant may not accept the advantages of the agreement and now seek to disclaim that agreement. The jury's finding that Travelers "acquired" the property on August 1, 1983, is supported by the record.

■ Appellant has also challenged the refusal of the trial court to instruct the jury on the doctrine of waiver. Appellant contends that Travelers waived its right to claim that the statute does not apply because Travelers took steps to comply with the statute. Gerzewski argues that by expressly conditioning the contract to sell the property to Offutt on the former owner's right of first refusal, and sending the shareholders the notice required by Minn. Stat. § 500.24, subds. 6 and 7, Travelers cannot now claim that the statute does not apply. We disagree.

The mere fact that Travelers prudently attempted to put HLF and its shareholders on notice of a possible statutory right does not mean that Travelers waived its contention that the right of first refusal no longer existed because the five year period had expired. Travelers took precautionary measures in case the statute did apply; it never gave any indication that it was waiving the defense that the statute no longer applied. The mere sending of a notice advising a party of the possible existence of a legal right does not create a statutory right. *See Rutherford v. County of Kandiyohi*, 449 N.W.2d 457, 461 (Minn. App.1989), *pet. for rev. denied* (Minn. Feb. 28, 1990). *See also Krueger v. Washington Federal Savings Bank of Montevideo*, 406 N.W.2d 543 (Minn.App.1987). The trial court's refusal to provide an instruction on waiver was consistent with the law.

■ Finally, although not necessary for our decision, respondent's contention that the statute may not even be applicable to appellant has merit. The plain language of the statute states that the right of first refusal must be provided to the "immediately preceding former owner." *See* Minn. Stat. § 500.24, subd. 6(b). As respondent correctly points out, the previous owner of this property was HLF. Appellant was only a minority shareholder of HLF. Arguendo, if the statute is applicable, for reasons discussed above, we find for respondent.

## II.

### *Sufficiency of Statutory Notice*

■ Travelers has challenged the jury's finding that it failed to make a proper mailing of the notice of the right of first refusal. A jury's answer to a special verdict question will be set aside only when it is palpably contrary to the evidence. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984). If the jury's special verdict finding can be reconciled on any theory, the verdict will not be disturbed. *Id.*

Travelers argues that service on Hanson was proper as he was the registered agent of HLF. Travelers contends that service on a corporation may be made by delivering a copy of the notice to the corporation's registered agent or an officer of the corporation. *See* Minn.R.Civ.P. 4.03(c). It also contends that the statute only requires a good faith effort to offer the land for sale to the former owner, and that mailing notice to the former owner's last known address establishes a good faith offer. *See* Minn.Stat. § 500.24, subds. 6(a) and 6(f).

Travelers relies on the testimony of Jack Hanson that, as of August 1988, the Secretary of State's records would indicate that Hanson was the registered agent for HLF. Travelers does not contend that it sent the notice to Hanson because it actually relied on the records of the Secretary of State listing Hanson as the registered agent. Rather, Travelers admits that it sent the notices to Hanson because he was the party who had negotiated the deed in lieu of foreclosure transaction with Travelers.

The record supports the jury's conclusion that Travelers failed to make a proper mailing of the notice of the right of first refusal. The first notice sent to Hanson on June 27, 1988, and to Gerzewski on June 28, 1988, did not comply with the requirements of Minn.Stat. § 500.24, subd. 7. In addition, Travelers learned that Hanson was no longer the proper party to receive the notices, and generated an internal memo indicating that all future notices should be sent to Gerzewski and the other HLF shareholders. Travelers did send the correct form of the notice on August 30, 1988, but mailed it to Hanson instead of to Gerzewski and the others. Hanson again notified Travelers that notices should be sent to Gerzewski and the others. It was not until September 20, 1988, that Gerzewski received notice in the proper form from Travelers. While Travelers also contends that its actions constituted a good faith effort to provide notice, there is sufficient evidence to support the jury's finding that Travelers failed to make proper mailing of the notice of the right of first refusal.

## DECISION

The trial court properly instructed the jury that intent of the parties may be considered in determining when property is "acquired" or "held" under Minn.Stat. § 500.24, subd. 6. The trial court's refusal to instruct the jury on the doctrine of waiver was proper. Thus, the jury's verdict that Travelers acquired the property on August 1, 1983, was proper, is supported by the record, and was not influenced by an error of law.

There is support in the record for the finding that Travelers failed to make a proper mailing of the notice of right of first refusal.

Affirmed.