**INDEPENDENT SCHOOL DISTRICT NO. 622, Respondent,**

v.

**KEENE CORPORATION (successor-in-interest to Baldwin–Hill Company, Baldwin–Ehret–Hill Company and Keene Building Products Corporation), Appellant.**

No. C7–91–234.

Court of Appeals of Minnesota.

Feb. 2, 1993.

Review Granted April 20, 1993.

Michael R. Sieben, Michael R. Strom and Harvey N. Jones, Hertogs, Fluegel, Sieben, Polk, Jones and LaVerdiere, P.A., Hastings, Edward J. Westbrook, J. Anderson Berly, III, Ness, Motley, Loadholt, Richardson & Poole, P.A., Charleston, SC, for respondent.

David F. Herr, Cooper S. Ashley, Mary R. Vasaly, Mark W. Lee, Minneapolis, Irene C. Warshauer, Sharon A. Merkle, Laura V. Jones, Anderson, Kill, Olick & Oshinsky, P.C., New York City, NY, for appellant.

\* Serving as judge of the Court of Appeals and as retired judge of the Court of Appeals by appoint-

Considered and decided by PETERSON, P.J., and FOLEY * and KALITOWSKI, JJ.

## OPINION

PETERSON, Judge.

Keene Corporation appeals from a judgment entered pursuant to a jury verdict awarding approximately $3.3 million to Independent School District No. 622, and from orders denying its alternative motions for judgment notwithstanding the verdict or for a new trial. We affirm as modified.

## FACTS

Respondent, Independent School District No. 622 ("the district"), owns and operates several school buildings, including Tartan High School ("Tartan"). In 1970, the district contracted with Bor–Son Construction Company ("Bor–Son") to build Tartan High School. Bor–Son worked with the district's architect, Corwin Seppanan and Associates ("Corwin"), to develop specifications for the project. Bor–Son and Corwin accepted Insulation Sales Company's (ISC) bid to apply fireproofing. ISC bought 500–600 bags of a fireproofing called Pyrospray from appellant, Keene Corporation ("Keene"), and applied it to the structural steel within Tartan.

In 1981, the district discovered that the Pyrospray fireproofing at Tartan contained asbestos and that asbestos could be dangerous. The district began a program to remove the asbestos and sued Keene for the removal costs. The district alleged Pyrospray was defective, Keene misrepresented the safety of Pyrospray, and Keene breached various warranties. Keene contended it did not know, and could not have known, in 1970 that asbestos fireproofing posed a danger to building occupants, and also that, in any event, the levels of asbestos fibers at Tartan were not dangerous. Bor–Son, Corwin and ISC settled with the district before trial.

ment pursuant to Minn. Const. art. VI, § 10.

The jury found in favor of the district on all counts, awarded $820,750 in compensatory damages and $2,462,250 in punitive damages (three times the compensatory damages). Keene appeals.

## ISSUES

1. Did the trial court properly rule as a matter of law that the district could recover damages arising from the sale of Pyrospray pursuant to tort theories of product liability?
2. Did the trial court properly rule as a matter of law that the district's claims were not barred by the statute of limitations?
3. Did the trial court properly rule as a matter of law that Keene's product was applied at Tartan High School?
4. Did the trial court properly instruct the jury on the comparative fault of the parties?
5. Was the punitive damages award proper?

## ANALYSIS

1. The trial court denied Keene's pretrial motion to dismiss the district's tort claims. Keene argues the trial court erroneously concluded the district's tort claims were not preempted by the Uniform Commercial Code (U.C.C.) under the economic loss rule set forth in *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981). We disagree.

In *Superwood,* the supreme court held that "economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable [in tort]." *Id.* at 162. In *Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn.1990), the supreme court clarified its holding in *Superwood* and held:

[T]he Uniform Commercial Code must control exclusively with respect to damages in a commercial transaction which involves property damage only, and any statement or implication to the contrary in *Superwood* and its progeny is hereby expressly overruled.

However, in a recent opinion that we find dispositive on this issue, the supreme court held that the economic loss doctrine as set forth in *Superwood* and *Hapka* does not bar the owner of a building with asbestos-containing fireproofing from suing the manufacturer of the fireproofing under the tort theories of negligence and strict liability for the costs of maintenance, removal and replacement of the fireproofing because the claim in such an action is not a claim for economic loss. *80 S. 8th St. Ltd. v. Carey–Canada, Inc.*, 486 N.W.2d 393, 396–99 (Minn.), *amended in part by*, 492 N.W.2d 256 (Minn.1992).

In *Carey–Canada,* a building owner sued the manufacturer of an asbestos-containing fireproofing for damages arising from the use of the fireproofing in the building. *Id.* at 395. The court determined the claim alleged in *Carey–Canada* was "not that the fireproofing failed to perform satisfactorily as fireproofing" as promised but that the use of the fireproofing "introduced into the building asbestos which is highly dangerous to humans." *Id.* at 397. The court concluded that "where the claim is for the contamination of the entire building with allegedly dangerous asbestos fibers, the claim is not one for economic loss." *Id.*

Similarly, the district is not suing to recover damages caused when the Pyrospray failed to perform as promised as fireproofing. Instead, the district is suing to recover the costs of maintenance, removal, and replacement of the fireproofing. Accordingly, the district's claim is not one for economic loss under the definition adopted by the supreme court in *Carey–Canada.* The trial court properly allowed the district to proceed with its tort claims.

*Lloyd F. Smith Co. v. Den–Tal–Ez, Inc.*, 491 N.W.2d 11 (Minn.1992), another recent opinion in which the supreme court clarified its holding in *Hapka*, provides an additional basis for the district's tort claims. In *Den–Tal–Ez*, the supreme court held

that the U.C.C. provides the exclusive remedy for other property damages aris-

ing out of a sale of goods only when the sale fits *Hapka's* narrow definition of a "commercial transaction," *i.e.,* where the parties to the sale are dealers in the same goods or, to use a more precise term, "merchants in goods of the kind." In actions for damages to other property which arise from a sale of goods between parties who are not "merchants in goods of the kind," such as in the case here, the tort remedies of negligence and strict liability are always available, even if the parties can sue under the U.C.C. as well.

*Id.* at 17 (footnote omitted). The sale in *Den–Tal–Ez* was the sale of a dental chair to a dentist. *Id.* at 13. Because the dentist was not a merchant in dental chairs, the tort remedies of negligence and strict liability were available in actions for damages to property other than the dental chair caused by a fire that allegedly started as a result of a defect in the dental chair. *Id.* at 15.

The district is not a merchant in fireproofing material. Therefore, under *Hapka,* as clarified by *Den–Tal–Ez,* the tort remedies of negligence and strict liability are available to it in its action for damages to property other than the Pyrospray.

■■■ 2. Prior to trial, the court denied Keene's motion to dismiss, concluding the district filed its suit within the applicable statute of limitations. Keene argues the trial court erroneously applied the 15–year limitation found in Minn.Stat. § 541.051 (1982), and the claims are not revived by Minn.Stat. § 541.22 (1988). If the claims are timely under section 541.051, there is no need to consider the revival issue. The resolution of this issue depends on identifying the law in effect when the district filed its claim in 1983. If, as Keene contends, the limitation for construction claims was 10 years, the district's claim is barred.

The original version of section 541.051 provided no claim for damages arising from an improvement to real property

could be asserted more than 10 years after construction. Minn.Stat. § 541.051 (1965). This section was declared unconstitutional in 1977. *Pacific Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 555 (Minn. 1977). The legislature reenacted the section in 1980 and provided for a 15–year limitation. *See* 1980 Minn.Laws ch. 518, §§ 2, 4. When the district filed its claim in 1983, the 15–year statute of limitations applied. *See* Minn.Stat. § 541.051 (1982). Given Tartan's construction date of 1970, the district's claim was timely.

Keene argues subsequent amendments of section 541.051 manifest the legislature's intent that no claim be made more than 10 years after construction. In 1986, the legislature amended the statute by reducing the 15–year limitation to 10 years. 1986 Minn.Laws ch. 455, § 92. The amendment contains no language indicating the legislature intended the 10–year limitation to apply retroactively. *See Wittmer v. Ruegemer,* 419 N.W.2d 493, 496–97 (Minn. 1988) (employing the 15–year limitation in an example despite passage of 1986 amendment reducing limitation to 10 years).

Keene argues this amendment was made retroactive by operation of still another amendment. In 1988, the legislature amended the section by specifying the discovery of injury rather than the discovery of defect begins the running of the limitation period. 1988 Minn.Laws ch. 607, § 1.[2] The 1988 amendment incorporated the 1986 amendment, and applied retroactively by its own terms. *Id.,* § 3. However, there is no clear manifestation that the legislature also intended the 10–year limitation to apply retroactively. In the absence of such an indication, we conclude the 1986 amendment should not be applied retroactively. The trial court correctly determined the district's claims were timely under Minn. Stat. § 541.051 (1982).

---

**2.** Keene argues this amendment was a response to *Lovgren v. Peoples Elec. Co.* 380 N.W.2d 791, 796 (Minn.1986) (1980 reenactment of section 541.051 was *not* intended to have retroactive effect). The 1988 amendment was a direct response to a different supreme court decision

that did not address the issue of retroactivity. *See Wittmer v. Ruegemer,* 419 N.W.2d 493, 496 (Minn.1988) (discovery of defective condition, not discovery of injury, triggers limitations in section 541.051).

Furthermore, retroactive application of the 10–year limitation would impermissibly abrogate a remedy for securing a vested right without giving the claimant some time to assert the claim. *See City of Willmar v. Short–Elliott–Hendrickson, Inc.*, 475 N.W.2d 73, 77 (Minn.1991) (reasonable time must be given to allow those with claims to comply with shortened statute of limitations); *Wichelman v. Messner*, 250 Minn. 88, 108–09, 83 N.W.2d 800, 817 (1957) (legislature cannot arbitrarily wipe out old claims without providing reasonable means of preserving them and reasonable time to do so). In this case, if the legislature were to arbitrarily cut off all pending claims not brought within 10 years of discovery, the district's claim would be summarily dismissed. This result would not comply with the requirements of *Wichelman.*

■ 3. Keene argues the existence of fact issues should have precluded the trial court's pretrial order granting summary judgment on the product identification issue. On review of summary judgment orders, this court views the evidence in the light most favorable to the party against whom the motion was granted and determines whether the trial court erred in its application of the law. *Valentine v. Conticommodity SVS, Inc.*, 344 N.W.2d 405, 406–07 (Minn.1984). However, when the moving party establishes a prima facie case, the burden of producing facts that raise a genuine issue shifts to the opposing party. *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn.1988). Summary judgment is proper when the nonmoving party fails to provide the court with specific indications of genuine fact issues. *Id.*

In this case, the district moved for summary judgment on the product identification issue, producing affidavits of Bangtson, a fireproofing subcontractor who worked on Tartan, and Edwards, a chemical analyst. Bangtson recalled (1) obtaining approval to use Pyrospray, (2) negotiating the price with Keene, (3) ordering Pyrospray from Keene, (4) ordering Pyrospray application equipment from Keene, and (5) receiving one truckload of 575 bags of fireproofing with "Keene" on the label

at Tartan. Bangtson did not order any other product from any other manufacturer for use on the Tartan site. Edwards compared the chemical composition of Pyrospray and every other formula of fireproofing used in Minnesota with fireproofing recovered from Tartan and concluded the chemical composition of the fireproofing installed at Tartan was consistent only with Pyrospray.

Keene had ample opportunity to cross examine both Bangtson and Edwards and to prepare a rebuttal, but failed to produce sufficient evidence to create a genuine fact issue on whether Pyrospray was used at Tartan or whether Pyrospray was used in conjunction with fireproofing manufactured by another company. Keene merely attempted to create inconsistencies in Bangtson's testimony that do not exist when the deposition is read in its entirety. Keene also argued Edwards' opinion was inconclusive, but did not produce sufficient evidence to discredit either Edwards' methods or his conclusion. The record supports the district's claim that it established a prima facie case that Pyrospray was installed at Tartan and that Keene failed to produce sufficient evidence to the contrary. We conclude the trial court properly granted summary judgment on this issue.

■ 4. Trial courts are allowed considerable latitude in selecting language in jury instructions. *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986). Instructions must as a whole convey a clear and correct understanding of the law. *Travelers Ins. Co. v. Horseshoe Lake Farms, Inc.*, 456 N.W.2d 453, 457 (Minn.App.1990). Reversal is not appropriate unless the instructions constitute an abuse of discretion. *Alholm*, 394 N.W.2d at 490.

Keene argues it was error to omit proposed instructions on the comparative fault of the district and of the co-defendants who settled before trial.

The court may, and *when requested by any party shall,* direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each party.

Minn.Stat. § 604.01, subd. 1 (1988) (emphasis added). The fact that a defendant settles under *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963) does not preclude the submission of the fault of the settling party. *Frey v. Snelgrove*, 269 N.W.2d 918, 922 (Minn.1978).[3]

▪▪▪ A literal reading of the statute requires the submission of comparative fault upon demand. However, submission upon merely a demand contradicts other precedent requiring the existence of some evidence to support an instruction. *See Oltmans v. Orthopaedic & Fracture Clinic*, 278 N.W.2d 538, 541 (Minn.1979) (submission of issue to jury without any evidence reasonably tending to prove its existence is reversible error); *Marshall v. Galvez*, 480 N.W.2d 358, 362 (Minn.App.1992) (party entitled to instruction only if evidence exists to support that instruction). Requiring a trial court to submit comparative fault to the jury simply because a party demanded such an instruction would also create the potential for abuse and confusion. Consequently, evidence supporting the submission of comparative fault to the jury must exist before a trial court is required to give such an instruction.

Our review of the record shows Keene presented no evidence to establish its claims that the contractor was at fault, the architect knew the asbestos was dangerous, the fireproofing subcontractor improperly installed the Pyrospray or Johns–Manville supplied the fireproofing. Given Keene's failure to introduce evidence sufficient to justify sending the question of the codefendants' fault to the jury, the trial court properly declined to instruct on this issue.

Keene also claims the trial court erred in not submitting the question of the district's fault to the jury because the district unreasonably increased its damages by waiting to remove the fireproofing and by removing it in stages. The comparative fault statute expressly provides that unreasonable failure to mitigate damages is a type of fault the jury should consider. Minn. Stat. § 604.01, subd. 1a (1988). The trial court did not include a question regarding the reasonableness of the district's removal efforts on the special verdict form. However, the trial court instructed the jury to consider the reasonableness of the district's abatement effort and to award reasonable damages for the district's injury. These instructions correctly conveyed the understanding that the jury should reduce the damage award if it found the district's removal effort was unreasonable. Because the instructions given to the jury conveyed a clear and correct understanding of the law of comparative fault, we will not reverse the verdict. *See Travelers*, 456 N.W.2d at 456–57.

▪▪▪ 5. "Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others." Minn.Stat. § 549.20, subd. 1 (1988). Because of the unique and volatile nature of punitive damages, we must closely scrutinize the assessment of a punitive damage award. *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 835 (Minn.1988), *cert. denied*, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). While examining the award, this court must keep in mind the factors which justly bear on the purpose of punitive damages outlined in Minn.Stat. § 549.-20, subd. 3. *Id.* at 837.

▪▪▪ Keene argues punitive damages cannot be awarded in the absence of personal injury citing *Eisert v. Greenberg Roofing & Sheet Metal Co.*, 314 N.W.2d 226 (Minn.1982). We disagree. In *Eisert*, the court held "punitive damages are not recoverable under a strict products liability theory for property damage." *Id.* at 228. However, here, in addition to its products liability claim, the district brought claims under other liability theories. Consequent-

---

**3.** In *Rediske v. Minnesota Valley Breeder's Ass'n*, 374 N.W.2d 745, 749 (Minn.App.1985), this court stated that where a party demands submission of comparative fault instructions, it is error to omit them. The supreme court granted review on this issue, but the issue was not resolved. *See Rediske v. Minnesota Valley Breeders' Ass'n*, 377 N.W.2d 459, 459 (Minn.1985), *appeal dismissed* (Minn.1986).

ly, the limitation in *Eisert* is not applicable. *See Muehlstedt v. City of Lino Lakes*, 473 N.W.2d 892, 897–98 (Minn.App.1991) (punitive damages may be awarded in non-products liability cases involving only property damage), *pet. for rev. denied* (Minn.1991).

■ The district's injuries are limited to property damage. Heightened appellate review is especially appropriate in cases where punitive damages were awarded despite the lack of personal injuries. *Id.* at 898.

Although the nature of the plaintiff's injury is not always listed as a factor in determining how to assess punitive damages, *see e.g.*, Minn.Stat. § 549.20, subd. 3 (1980), it may reasonably be taken into account in deciding where punitive damages will be allowed. Where that injury is limited to property damage, the public interest in punishment and deterrence is largely satisfied by the plaintiff's recovery of compensatory damages.

*Eisert*, 314 N.W.2d at 229 (citations omitted).

■ Although the use of Pyrospray created a hazard to human health, the district, as an entity, is not threatened by this hazard. It is not necessary to protect the district from the health hazard created by Pyrospray.

However, the conduct that damaged the district's building is the same conduct that created the health hazard for occupants of the building. Punitive damages are not awarded to compensate victims for harm; they are awarded to punish conduct and to deter similar conduct. *Pacific Mut. Life Ins. Co. v. Haslip*, —— U.S. ——, ——, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1991); *Hodder*, 426 N.W.2d at 837. Their deterrent effect provides a general benefit to society. The conduct to be deterred in this instance is the manufacture, distribution, and use of a hazardous building material. This conduct left the district with a building that had to be substantially repaired to permit its continued use.

Although compensatory damages for the cost of repairing the building can restore the district's ability to use its building in the future, they cannot retroactively re-move the consequences of exposing building occupants to the health hazard in the past. Because Keene's conduct created a health hazard for occupants of the building, the jury could conclude that Keene acted with willful indifference to the rights of others in manufacturing and supplying Pyrospray even though the district could not be harmed directly by the hazard.

■ However, when reviewing a punitive damages award, one of the factors this court must consider is

the total effect of other punishment likely to be imposed upon the defendant as a result of the misconduct, including compensatory and punitive damage awards to the plaintiff and other similarly situated persons.

Minn.Stat. § 549.20, subd. 3 (1990); *see Hodder*, 426 N.W.2d at 837 (appellate court should consider factors in Minn.Stat. § 549.20, subd. 3).

Because Keene's misconduct created a health hazard for occupants of the district's building, Keene may be subjected to future lawsuits by building occupants seeking recovery for injuries caused by the hazard. Compensatory and punitive damages could be sought in any such lawsuit. If the health hazard created by Keene's misconduct ultimately injures building occupants the punishment likely to be imposed upon Keene is substantial. There is also a strong likelihood that Keene will face similar lawsuits arising from the use of Pyrospray in other buildings. The likelihood of this other punishment already poses a significant deterrent to similar future misconduct by Keene.

Furthermore, it is ironic that any amount awarded the district as punitive damages will not be available to pay compensatory damages for personal injuries suffered by building occupants. However, it is equally ironic that, by repairing its building when the health hazard was discovered, the district reduced the chances that Keene's misconduct will cause personal injuries at Tartan High School and that other punishment will be imposed on Keene for its misconduct. Therefore, we decline to reverse the

award of punitive damages, but we reduce the award by one-half and grant the district $1,231,125 in punitive damages.

Keene also argues the trial court erroneously failed to try the liability and punitive damages issues separately. Minn.R.Civ.P. 42.02 permits bifurcation of actions and issues in the interest of convenience, economy, or the avoidance of prejudice. The decision to consolidate or sever issues rests within the sound discretion of the trial court. *Grosfield v. Clearwater Clinic*, 417 N.W.2d 640, 642 (Minn.1988); *Western Fire Ins. Co. v. Persons*, 393 N.W.2d 234, 236 (Minn.App.1986) (citing *Fitzer v. Bloom*, 253 N.W.2d 395, 401–02 (Minn. 1977)).

Keene argues the introduction of evidence on punitive damages prejudiced its product liability defense, and the application of different standards of proof (clear and convincing vs. preponderance) was confusing. However, the only item of evidence related solely to punitive damages was the statement of Keene's net worth. Consequently, the trial court did not abuse its discretion by determining separate trials would be duplicative and wasteful.

6. Keene raised several other issues concerning the propriety of evidentiary rulings, rulings on its motions for a directed verdict and judgment notwithstanding the verdict, and rulings on several post-trial matters. The court has carefully examined each of Keene's claims and has determined that if any erroneous rulings occurred, no prejudice sufficient to entitle Keene to a new trial resulted. *See Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) (to obtain reversal, moving party must show prejudicial error).

## DECISION

The tort remedies of negligence and strict liability were available to the district because it was not a merchant of fireproofing material and because its cause of action for contamination of its building with asbestos fibers was not a claim for economic loss. The trial court properly applied a 15–year statute of limitations when the legislature did not manifest a clear intent to apply a 10–year statute of limitations retroactively. The trial court properly granted summary judgment for the district on the issue of product identification where Keene failed to produce any evidence to establish a genuine issue of fact. Absent any evidence supporting submission of the comparative fault issue to the jury, the trial court did not err in refusing to give a requested comparative fault instruction. While punitive damages were properly awarded, this court's close scrutiny of the award and application of the factors set forth in Minn. Stat. § 549.20, subd. 3 show the purpose of punitive damages would be best served by reducing the award by one-half.

Affirmed as modified.